Reversed by unpublished opinion. Judge SHEDD wrote the majority opinion, in which Judge MOTZ concurred. Judge AGEE wrote a dissenting opinion.
Unpublished opinions are not binding precedent in this circuit.
*656 SHEDD, Circuit Judge:
The Government brought this action seeking to enforce civil penalties assessed against J. Bryan Williams for his failure to report his interest in two foreign bank accounts for tax year 2000, in violation of 31 U.S.C. § 5314. Following a bench trial, the district court entered judgment in favor of Williams. The Government now appeals. Because we conclude that the district court clearly erred in finding that the Government failed to prove that Williams willfully violated § 5314, we reverse.
I
Federal law requires taxpayers to report annually to the Internal Revenue Service (“IRS”) any financial interests they have in any bank, securities, or other financial accounts in a foreign country. 31 U.S.C. § 5314(a). The report is made by filing a completed form TD F 90-22.1 (“FBAR”) with the Department of the Treasury.[1] See id. § 5314; 31 C.F.R. § 1010.350. The FBAR must be filed on or before June 30 of each calendar year with respect to foreign financial accounts maintained during the previous calendar year, 31 C.F.R. § 1010.306(c), and the Secretary of the Treasury may impose a civil money penalty on any person who fails to timely file the report, 31 U.S.C. § 5321(a)(5)(A). Moreover, in cases where a person “willfully” fails to file the FBAR, the Secretary may impose an increased maximum penalty, up to $100,000 or fifty percent of the balance in the account at the time of the violation. Id. § 5321(a)(5)(C). The authority to enforce such assessments has been delegated to the IRS. 31 C.F.R. § 1010.810 (g).
In 1993, Williams opened two Swiss bank accounts in the name of ALQI Holdings, Ltd., a British Corporation (the “ALQI accounts”). From 1993 through 2000, Williams deposited more than $7,000,000 into the ALQI accounts, earning more than $800,000 in income on the deposits. However, for each of the tax years during that period, Williams did not report to the IRS the income from the ALQI accounts or his interest in the accounts, as he was required to do under § 5314.
By the fall of 2000, Swiss and Government authorities had become aware of the assets in the ALQI accounts. Williams retained counsel and on November 13, 2000, he met with Swiss authorities to discuss the accounts. The following day, at the request of the Government, the Swiss authorities froze the ALQI accounts.
Relevant to this appeal, Williams completed a “tax organizer” in January 2001, which had been provided to him by his accountant in connection with the preparation of his 2000 federal tax return. In response to the question in the tax organizer regarding whether Williams had “an interest in or a signature or other authority over a bank account, or other financial account in a foreign country,” Williams answered “No.” J.A. 111. In addition, the 2000 Form 1040, line 7a in Part III of Schedule B asks:
At any time during 2000, did you have an interest in or a signature or other authority over a financial account in a foreign country, such as a bank account, securities account, or other financial account? See instructions for exceptions and filing requirements for Form TD F 90-22.1.
*657 J.A. 131. On his 2000 federal tax return, Williams checked “No” in response to this question, and he did not file an FBAR by the June 30, 2001, deadline.
Subsequently, upon the advice of his attorneys and accountants, Williams fully disclosed the ALQI accounts to an IRS agent in January 2002. In October 2002 he filed his 2001 federal tax return on which he acknowledged his interest in the ALQI accounts. Williams also disclosed the accounts to the IRS in February 2003 as part of his application to participate in the Offshore Voluntary Compliance Initiative.[2] At that time he also filed amended returns for 1999 and 2000, which disclosed details about his ALQI accounts.
In June 2003, Williams pled guilty to a two-count superseding criminal information, which charged him with conspiracy to defraud the IRS, in violation of 18 U.S.C. § 371, and criminal tax evasion, in violation of 26 U.S.C. § 7201, in connection with the funds held in the ALQI accounts from 1993 through 2000. As part of the plea, Williams agreed to alloeute to all of the essential elements of the charged crimes, including that he unlawfully, willfully, and knowingly evaded taxes by filing false and fraudulent tax returns on which he failed to disclose his interest in the ALQI accounts. In exchange for his allo-cution, Williams received a three-level reduction under the Sentencing Guidelines for acceptance of responsibility.[3]
In his allocution, Williams admitted the following:
I knew that most of the funds deposited into the Alqi accounts and all the interest income were taxable income to me. However, the calendar year tax returns for '93 through 2000,1 chose not to report the income to my — to the Internal Revenue Service in order to evade the substantial taxes owed thereon, until I filed my 2001 tax return.
I also knew that I had the obligation to report to the IRS and/or the Department of the Treasury the existence of the Swiss accounts, but for the calendar year tax returns 1993 through 2000, I chose not to in order to assist in hiding my true income from the IRS and evade taxes thereon, until I filed my 2001 tax return.
I knew what I was doing was wrong and unlawful. I, therefore, believe that I am guilty of evading the payment of taxes for the tax years 1993 through 2000. I also believe that I acted in concert with others to create a mechanism, the Alqi accounts, which I intended to allow me to escape detection by the IRS. Therefore, I am — I believe that I’m guilty of conspiring with the people would (sic) whom I dealt regarding the Alqi accounts to defraud the United States of taxes which I owed.
J.A. 55 (emphasis added).
In January 2007, Williams finally filed an FBAR for each tax year from 1993 through 2000. Thereafter, the IRS assessed two $100,000 civil penalties against him, pursuant to § 5321(a)(5), for his failure to file an FBAR for tax year 2000.[4] *658 Williams failed to pay these penalties, and the Government brought this enforcement action to collect them. Following a bench trial, the district court entered judgment in favor of Williams, finding that the Government failed to establish that Williams willfully violated § 5314. The Government timely appealed.
II
The parties agree that Williams violated § 5314 by failing to timely file an FBAR for tax year 2000. The only question is whether the -violation was willful. The district court found that (1) Williams “lacked any motivation to willfully conceal the accounts from authorities” because they were already aware of the accounts and (2) his failure to disclose the accounts “was not an act undertaken intentionally or in deliberate disregard for the law, but instead constituted an understandable omission given the context in which it occurred.” [5] J.A. 378-79. Therefore, the district court found that Williams’s violation of § 5314 was not willful.
“Willfulness may be proven through inference from conduct meant to conceal or mislead sources of income or other financial information,” and it “can be inferred from a conscious effort to avoid learning about reporting requirements.” United States v. Sturman, 951 F.2d 1466, 1476 (6th Cir.1991) (internal citations omitted) (noting willfulness standard in criminal conviction for failure to file an FBAR). Similarly, “willful blindness” may be inferred where “a defendant was subjectively aware of a high probability of the existence of a tax liability, and purposefully avoided learning the facts point to such liability.” United States v. Poole, 640 F.3d 114, 122 (4th Cir.2011) (affirming criminal conviction for willful tax fraud where tax preparer “closed his eyes to” large accounting discrepancies). Importantly, in cases “where willfulness is a statutory condition of civil liability, [courts] have generally taken it to cover not only knowing violations of a standard, but reckless ones as well.” Safeco Ins. Co. of America v. Burr, 551 U.S. 47, 57, 127 S.Ct. 2201, 167 L.Ed.2d 1045 (2007) (emphasis added).Whether a person has willfully failed to comply with a tax reporting requirement is a question of fact. Rykoff v. United States, 40 F.3d 305, 307 (9th Cir.1994); accord United States v. Gormley, 201 F.3d 290, 294 (4th Cir.2000) (“[T]he question of willfulness is essentially a finding of fact.”).
We review factual findings under the clearly erroneous standard set forth in Federal Rule of Civil Procedure 52(a). Walton v. Johnson, 440 F.3d 160, 173-74 *659 (4th Cir.2006) (en banc). “Our scope of review is narrow; we do not exercise de novo review of factual findings or substitute our version of the facts for that found by the district court.” Id. at 17B. “If the district court’s account of the evidence is plausible in light of the record viewed in its entirety, the court of appeals may not reverse it even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently.” Id. (quoting Anderson v. City of Bessemer City, 470 U.S. 564, 573-74, 105 S.Ct. 1504, 84 L.Ed.2d 518 (1985)). However, notwithstanding our circumscribed review or the deference we give to a district court’s findings, those findings are not conclusive if they are “plainly wrong.” Id. (quoting Jiminez v. Mary Washington College, 57 F.3d 369, 379 (4th Cir.1995)). The clear error standard still requires us to engage in “meaningful appellate review,” United States v. Abu Ali, 528 F.3d 210, 261 (4th Cir.2008), and where objective evidence contradicts a witness’ story, or the story itself is “so internally inconsistent or implausible on its face that a reasonable fact-finder would not credit it, ... the court of appeals may well find clear error even in a finding purportedly based on a credibility determination.” United States v. Hall, 664 F.3d 456, 462 (4th Cir.2012) (citing Anderson, 470 U.S. at 575, 105 S.Ct. 1504). Thus, “[a] finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with a definite and firm conviction that a mistake has been committed.” F.C. Wheat Maritime Corp. v. United States, 663 F.3d 714, 723 (4th Cir.2011).
Here, the evidence as a whole leaves us with a definite and firm conviction that the district court clearly erred in finding that Williams did not willfully violate § 5314. Williams signed his 2000 federal tax return, thereby declaring under penalty of perjury that he had “examined this return and accompanying schedules and statements” and that, to the best of his knowledge, the return was “true, accurate, and complete.” “A taxpayer who signs a tax return will not be heard to claim innocence for not having actually read the return, as he or she is charged with constructive knowledge of its contents.” Greer v. Commissioner of Internal Revenue, 595 F.3d 338, 347 n. 4 (6th Cir.2010); United States v. Doherty, 233 F.3d 1275, 1282 n. 10 (11th Cir.2000) (same). Williams’s signature is prima facie evidence that he knew the contents of the return, United States v. Mohney, 949 F.2d 1397, 1407 (6th Cir.1991), and at a minimum line 7a’s directions to “[s]ee instructions for exceptions and filing requirements for Form TD F 90-22.1” put Williams on inquiry notice of the FBAR requirement.
Nothing in the record indicates that Williams ever consulted Form TD F 90-22.1 or its instructions. In fact, Williams testified that he did not read line 7a and “never paid any attention to any of the written words” on his federal tax return. J.A. 299. Thus, Williams made a “conscious effort to avoid learning about reporting requirements,” Sturman, 951 F.2d at 1476, and his false answers on both the tax organizer and his federal tax return evidence conduct that was “meant to conceal or mislead sources of income or other financial information,” id. (“It is reasonable to assume that a person who has foreign bank accounts would read the information specified by the government in tax forms. Evidence of acts to conceal income and financial information, combined with the defendant’s failure to pursue knowledge of further reporting requirements as suggested on Schedule B, provide a sufficient basis to establish willfulness on the part of the defendant.”). This conduct constitutes willful blindness to the FBAR requirement. Poole, 640 F.3d at 122 (“[Ijntentional ignorance and actual knowledge are equally culpable under the law.”)
*660 Williams’s guilty plea allocution further confirms that his violation of § 5314 was willful. During that allocution, Williams acknowledged that he willfully failed to report the existence of the ALQI accounts to the IRS or Department of the Treasury as part of his larger scheme of tax evasion. This failure to report the ALQI accounts is an admission of violating § 5314, because a taxpayer complies with § 5314 by filing an FBAR with the Department of the Treasury. In light of his allocution, Williams cannot now claim that he was unaware of,[6] inadvertently ignored, or otherwise lacked the motivation to willfully disregard the FBAR reporting requirement.
Thus, we are convinced that, at a minimum, Williams’s undisputed actions establish reckless conduct, which satisfies the proof requirement under § 5314. Safeco Ins., 551 U.S. at 57, 127 S.Ct. 2201. Accordingly, we conclude that the district court clearly erred in finding that willfulness had not been established.
Ill
For the foregoing reasons, we reverse the judgment of the district court and remand this case for proceedings consistent with this opinion.

REVERSED.

. TD F 90-22.1, which is a form issued by the Department of the Treasury, is tided "Report of Foreign Bank and Financial Accounts” and is commonly referred to as the "FBAR.” The regulations relating to the FBAR were formerly published at 31 C.F.R. §§ 103.24 and 103.27, but were recodified in a new chapter effective March 1, 2011. See Transfer & Reorganization of Bank Secrecy Act Regulations, 75 Fed.Reg. 65806 (Oct. 26, 2010). For ease, our citations are to the recodified sections.

. The IRS rejected the application and turned it over to the attorney for the United States who was conducting a grand jury investigation of Williams.

. Williams also agreed to pay all taxes and criminal penalties due for tax years 1993 through 2000, but he has since refused to pay some of those taxes and penalties and has engaged the IRS in litigation over that issue. See Williams v. Commissioner of Internal Revenue, 97 T.C.M. (CCH) 1422 (Apr. 16, 2009).

.The statute of limitations for assessing penalties for tax years 1993 through 1999 had expired by the time the IRS assessed the civil penalties. See 31 U.S.C. § 5321(b)(1) and (2).

. In making its determination, the district court emphasized Williams’s motivation rather than the relevant issue of his intent. See Am. Arms Int'l v. Herbert, 563 F.3d 78, 83 (4th Cir.2009) ("[M]alice or improper motive is not necessary to establish willfulness.”). To the extent the district court focused on motivation as proof of the lack of intent, it simply drew an unreasonable inference from the record. In November 2000, Swiss authorities met with Williams to discuss the ALQI accounts and thereafter froze them at the request of the United States Government. Although the Government knew of the existence of the accounts, nothing in the record indicates that, when the accounts were frozen, the Government knew the extent, control, or degree of Williams's interest in the accounts or the total funds held in the accounts. As Williams admitted in his allocution, his decision not to report the accounts was part of his tax evasion scheme that continued until he filed his 2001 tax return. Thus, his failure to disclose information about the ALQI accounts on his 2000 tax return in May 2001 was motivated by his desire not to admit his interest in the accounts, even after authorities had been aware of them for over six months. Rarely does a person who knows he is under investigation by the Government immediately disclose his wrongdoing because he is not sure how much the Government knows about his role in that wrongdoing. Thus, without question, when Williams filed in May of 2001, he was clearly motivated not to admit his interest in the ALQI accounts.

. In fact, seven months before his criminal allocution, Williams sent a letter to the IRS requesting to participate in the Offshore Voluntary Compliance Initiative "[pjursuant to Rev. Proc.2003-11.” J.A. 183-84. On the first page of Revenue Procedure 2003-11, the IRS specifically informs applicants that a primary benefit of the Initiative is that participating taxpayers can avoid penalties for having failed to timely file an FBAR. Clearly, Williams was aware of the FBAR at the time of his allocution. Further, to the extent Williams asserts he was unaware of the FBAR requirement because his attorneys or accountants never informed him, his ignorance also resulted from his own recklessness. Williams concedes that from 1993-2000 he never informed his accountant of the existence of the foreign accounts — even after retaining counsel and with the knowledge that authorities were aware of the existence of the accounts.