PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 17-3525

ARTHUR BEDROSIAN

v.

UNITED STATES OF AMERICA, DEPARTMENT OF
THE TREASURY,
INTERNAL REVENUE SERVICE,

Appellant

Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. Civil Action No. 2:15-cv-05853)
District Judge: Honorable Michael M. Baylson

Argued September 25, 2018

Before: AMBRO, CHAGARES,
and GREENAWAY, JR., Circuit Judges

(Opinion filed:  December 21, 2018)

Richard E. Zuckerman
   Principal Deputy Assistant Attorney General
Travis A. Greaves
   Deputy Assistant Attorney General
Gilbert S. Rothenberg, Esquire
Francesca Ugolini, Esquire
Andrew M. Weiner, Esquire     (Argued)
United States Department of Justice, Tax Division
950 Pennsylvania Avenue, N.W.
P.O. Box 502
Washington, DC 20044

     Counsel for Appellant

Patrick J. Egan, Esquire     (Argued)
Beth L. Weisser, Esquire
Fox Rothschild
2000 Market Street, 20th Floor
Philadelphia, PA 19103

     Counsel for Appellee

---

OPINION OF THE COURT

---

AMBRO, <u>Circuit Judge</u>

This appeal presents two issues of first impression in our Court concerning the Internal Revenue Service's assessment of civil penalties for violation of 31 U.S.C. § 5314 and its implementing regulations, which require certain persons annually to file a Report of Foreign Bank and

Financial Accounts (colloquially called a "FBAR" or simply "Report"). First, we examine federal court jurisdiction over actions challenging the IRS's assessment of civil FBAR penalties. We conclude that jurisdiction exists here but reserve the question whether it is established in the District Court when a taxpayer files suit to challenge a FBAR penalty before fully paying it. Second, we clarify that, to prove a "willful" FBAR violation, the Government must satisfy the civil willfulness standard, which includes both knowing and reckless conduct. To ensure this action accords with that standard, we remand for further proceedings consistent with our opinion.

## I.    Background

### A.  Legal Background

Congress passed the Bank Secrecy Act of 1970 to require certain reports and records that may be useful in "criminal, tax, or regulatory investigations or proceedings, or in the conduct of intelligence or counterintelligence activities . . . ." 31 U.S.C. § 5311. One provision of the Act, 31 U.S.C. § 5314, instructs the Secretary of the Treasury to prescribe rules that require persons to file an annual report identifying certain transactions or relations with foreign financial agencies. The Secretary has implemented this statute through various regulations, including 31 C.F.R. § 1010.350, which specifies that certain United States persons must annually file a Report with the IRS. Covered persons must file it by June 30 each year for foreign accounts exceeding $10,000 in the prior calendar year. 31 C.F.R. § 1010.306(c). The authority to enforce the FBAR requirement has been delegated to the Commissioner of Internal Revenue. *Id.* § 1010.810(g); *see also* Internal Revenue Manual § 4.26.1, Ex. 4.26.1-3 (U.S. Dep't of Treasury Memorandum of Agreement and

3

Delegation of Authority for Enforcement of FBAR Requirements).

The civil penalties for a FBAR violation are in 31 U.S.C. § 5321(a)(5). The maximum penalty for a non-willful violation is $10,000. *Id.* § 5321(a)(5)(B)(i). By contrast, the maximum penalty for a willful violation is the greater of $100,000 or 50% of the balance in the unreported foreign account at the time of the violation. *Id.* § 5321(a)(5)(C)(i).

## B. Facts and Procedural History

Plaintiff-appellee Arthur Bedrosian is a successful businessman who has worked in the pharmaceutical industry since the late 1960s. By 1973 he had opened a savings account in Switzerland so that he could make purchases while traveling abroad for work without relying solely on traveler's checks to do so. Bedrosian initially used the account for convenient access to funds while traveling abroad, but in later years he began to use it more as a savings account. Union Bank of Switzerland ("UBS") thereafter acquired the bank where Bedrosian had opened his account, which caused the account to become a UBS account.

From 1973 until 2007 Bedrosian used the services of accountant Seymour Handelman to prepare his income tax returns. Sometime in the 1990s according to Bedrosian, he informed Handelman for the first time that he maintained a bank account in Switzerland. Handelman told Bedrosian that he had been breaking the law every year he did not report the Swiss account to the IRS. Handelman also told him that his estate could deal with the consequences after he was dead. With this advice, Bedrosian continued not to report his UBS account when he filed his annual tax returns.

4

In 2005 UBS approached Bedrosian and proposed that it loan him 750,000 Swiss Francs and convert his savings account into an investment account. Bedrosian accepted the proposal, and the loan transaction that followed resulted in the creation of a second account under Bedrosian's control at UBS.

In 2007 Handelman died, and Bedrosian began filing his taxes through a new accountant, Sheldon Bransky. In preparation, Bedrosian authorized Bransky to obtain his records from Handelman's offices and gave Bransky the same materials that he was accustomed to giving Handelman in prior years. Bransky then prepared Bedrosian's 2007 tax return, on which he indicated that Bedrosian owned a foreign bank account. Bransky also prepared a FBAR for Bedrosian, which identified one of Bedrosian's two accounts at UBS. The account identified had assets totaling approximately $240,000; the account omitted had assets totaling approximately $2 million.

At trial Bedrosian testified that he had no recollection of discussing his Swiss bank accounts with Bransky. Bedrosian also testified that he did not know how Bransky knew to acknowledge the existence of a foreign bank account on the tax return or how Bransky knew to prepare the Report. Bedrosian also did not review the 2007 tax return and Report. He simply signed them.

After submitting these documents for tax year 2007, Bedrosian became more aware of the seriousness of not reporting foreign bank accounts to the IRS. After seeking legal counsel, he began correcting the inaccuracies on his prior tax filings. Nonetheless, in April 2011 the IRS notified Bedrosian that it would audit his recent tax returns.

In January 2015 the IRS assessed against Bedrosian a penalty for "willful" failure to disclose the larger UBS account on his 2007 Report. The penalty assessed was equal to the statutory maximum of $975,789, *i.e.*, 50% of the undisclosed account. Bedrosian paid $9,757.89 (one percent of the penalty assessed) and then filed a complaint in the District Court seeking to recover his $9,757.89 payment as an unlawful exaction. The Government answered Bedrosian's complaint and filed a counterclaim for the allegedly full penalty amount of $1,007,345, which included interest and a late-payment penalty.

In the District Court, the only disputed issue on the merits was whether Bedrosian's failure to disclose his $2 million UBS account on his 2007 Report was "willful." The Court held a one-day bench trial to resolve the issue. After trial it issued findings of fact and conclusions of law, concluding that the Government had failed to establish Bedrosian's Report violation was willful. Accordingly, the Court entered judgment in favor of Bedrosian both on his claim against the Government and on its counterclaim against him. The Government appeals to us.

## II.    Jurisdiction

The parties contend we have jurisdiction under 28 U.S.C. § 1291 to review the District Court's entry of final judgment. But we have "an independent duty to satisfy ourselves of our appellate jurisdiction regardless of the parties' positions." *Papotto v. Hartford Life & Acc. Ins. Co.*, 731 F.3d 265, 269 (3d Cir. 2013) (quoting *Kreider Dairy Farms, Inc. v. Glickman*, 190 F.3d 113, 118 (3d Cir. 1999)).

The jurisdictional inquiry in this case is a matter of first impression. Unlike most cases involving the IRS's assessment of a civil FBAR penalty, in which the IRS files

6

suit to recover the penalty, this case began when Bedrosian paid one percent of the assessed penalty and then filed a complaint in the District Court seeking to recover his partial payment. The Government did not challenge that Court's jurisdiction over Bedrosian's claim; as noted, it instead answered the complaint and filed a counterclaim seeking the full penalty amount.

The parties contend the District Court had jurisdiction over Bedrosian's claim under the so-called Little Tucker Act, 28 U.S.C. § 1346(a)(2), which provides district courts with original jurisdiction, concurrent with the U.S. Court of Federal Claims, over certain claims against the United States not exceeding $10,000 in amount, including certain claims "founded . . . upon the Constitution . . . or [an] Act of Congress." The parties contend Bedrosian's claim qualified for jurisdiction under the Little Tucker Act because it did not exceed $10,000 in amount (Bedrosian's initial claim seeking to recover his partial payment of $9,757.89) and was founded on the FBAR statute, 31 U.S.C. §§ 5314 & 5321.

We decline to hold that Bedrosian's initial claim against the Government gains jurisdiction under the Little Tucker Act. A claim may qualify only if it does not fall within the scope of the so-called tax refund statute, 28 U.S.C. § 1346(a)(1). *See id.* § 1346(a)(2) (applying to claims "other" than those within 28 U.S.C. § 1346(a)(1)). The tax refund statute encompasses, among other things, claims to seek recovery of any "penalty" that is wrongfully collected "under the internal-revenue laws." *Id.* § 1346(a)(1). The parties concede that a civil penalty under the FBAR statute is a "penalty" under § 1346(a)(1), but they contend it was not assessed "under the internal-revenue laws" because the FBAR statute, 31 U.S.C. §§ 5314 & 5321, is in Title 31 of the U.S. Code, not Title 26 (the Internal Revenue Code). We are skeptical of this argument's elevation of form over substance,

7

and, for reasons stated in the margin, we are inclined to believe that Bedrosian's initial claim did not qualify for district court jurisdiction at all.[1]

---

[1] The parties' argument that Bedrosian's claim is not within the tax refund statute is premised on the notion that the phrase "internal-revenue laws" in 28 U.S.C. § 1346(a)(1) refers only to laws codified in Title 26 of the U.S. Code. But that argument does not follow the statutory history of the tax refund statute, which suggests that "internal-revenue laws" are defined by their function and not their placement in the U.S. Code. *See Wyodak Res. Dev. Corp. v. United States*, 637 F.3d 1127, 1134 (10th Cir. 2011). The argument also ignores the Tax Court's rejection of the proposition that "internal revenue laws are limited to laws codified in [T]itle 26." *See Whistleblower 21276–13W v. Comm'r*, 147 T.C. 121, 130 & n.13 (2016) (noting that "the IRS itself acknowledges that tax laws may be found outside title 26"). We also observe, by analogy, that claims brought by taxpayers to recover penalties assessed under 26 U.S.C. § 6038(b) for failing to report holdings of foreign companies—a statute nearly identical to the FBAR statute, except addressing foreign business holdings rather than foreign bank accounts—are brought under the tax refund statute, 28 U.S.C. § 1346(a)(1). *See Dewees v. United States*, 2017 WL 8185850, at *1 (Fed. Cir. Nov. 3, 2017). Also, allowing a taxpayer to seek recovery of a FBAR penalty under the Little Tucker Act permits that person to seek a ruling on that penalty in federal district court without first paying the entire penalty, as Bedrosian did here by paying just under the $10,000 Little Tucker Act threshold. This violates a first principle of tax litigation in federal district court—"pay first and litigate later." *Flora v. United States*,

8

Nonetheless, even if Bedrosian's initial claim was not within the Court's original jurisdiction for Bedrosian's complaint, it had the authority to act by virtue of the Government's counterclaim, which supplied jurisdiction under 28 U.S.C. § 1345. *See Rengo Co. v. Molins Mach. Co.*, 657 F.2d 535, 539 (3d Cir. 1981) ("[A] jurisdictional defect in the complaint will not preclude adjudication of a counterclaim over which the court has an independent basis of jurisdiction."). We therefore have jurisdiction under 28 U.S.C. § 1291 to review the District Court's final judgment, unless another statute takes away our jurisdiction.

Given the potential implication of the Little Tucker Act, we consider whether our jurisdiction is removed in this case by the statute governing the exclusive jurisdiction of the U.S. Court of Appeals for the Federal Circuit. *See Chabal v. Reagan*, 822 F.2d 349, 355 (3d Cir. 1987). We are satisfied that it is not. Under 28 U.S.C. § 1295(a)(2), the Federal Circuit generally has exclusive jurisdiction over appeals from cases in which a district court's jurisdiction was based, in whole or in part, on the Little Tucker Act, 28 U.S.C. § 1346(a)(2), unless the claim stemmed from "an Act of Congress or a regulation of an executive department providing for internal revenue." 28 U.S.C. § 1295(a)(2). Although the statute does not define "providing for internal revenue," we take guidance from courts that have construed

362 U.S. 145, 164 (1960). We are inclined to believe the initial claim of Bedrosian was within the scope of 28 U.S.C. § 1346(a)(1) and thus did not supply the District Court with jurisdiction at all because he did not pay the full penalty before filing suit, as would be required to establish jurisdiction under subsection (a)(1). *See Flora*, 362 U.S. at 176–77. But given the procedural posture of this case, we leave a definitive holding on this issue for another day.

this same phrase in 28 U.S.C. § 1340, the only other federal statute that employs the same language.[2] In keeping with those courts, we construe the phrase "providing for internal revenue" broadly to encompass all federal statutes and regulations that are "part of the machinery for the collection of federal taxes." *United States v. Coson*, 286 F.2d 453, 455–56 (9th Cir. 1961) (quotation omitted); *see also Aqua Bar & Lounge, Inc. v. United States*, 539 F.2d 935, 937 (3d Cir. 1976) (citing *Coson*). (For those who might ask about legislative history, there is no meaningful guidance on the meaning of "providing for internal revenue" under § 1295(a)(2).)

Under this construction, we conclude that the FBAR statute "provid[es] for internal revenue" within the meaning of 28 U.S.C. § 1295(a)(2). The statute was enacted initially as part of the Bank Secrecy Act of 1970, which was intended to promote, among other things, the collection of federal taxes. *See* 31 U.S.C. § 5311; *see also United States v. Chabot*, 793 F.3d 338, 344 (3d Cir. 2015) (describing the purpose of the Bank Secrecy Act: "for tax collection, development of monetary policy, and conducting intelligence activities"). In passing that Act, Congress was particularly

---

[2] 28 U.S.C. § 1340 provides: "The district courts shall have original jurisdiction of any civil action arising under any Act of Congress providing for internal revenue, or revenue from imports or tonnage except matters within the jurisdiction of the Court of International Trade." As Judge Posner has observed, "the elimination of the minimum amount in controversy from [28 U.S.C. § 1331] made [28 U.S.C. § 1340] . . . [one of] so many beached whales, yet no one thought to repeal those now-redundant statutes." *Winstead v. J.C. Penney Co.*, 933 F.2d 576, 580 (7th Cir. 1991).

concerned with "[s]ecret foreign financial facilities, particularly in Switzerland," that offered the wealthy a "grossly unfair" but "convenient avenue of tax evasion." H.R. Rep. No. 91-975 at 13 (1970), *reprinted in* 1971-1 C.B. 559, 561. The IRS has by delegation the authority to enforce the FBAR statute and implementing regulations, 31 C.F.R. § 1010.810(g), and it has developed a comprehensive scheme for enforcing and assessing the FBAR penalty. *See* Internal Revenue Manual §§ 4.26 & 8.11.6. Congress further emphasized the tax-related nature of the statute by amending its penalty provisions as part of the American Jobs Creation Act of 2004, a piece of tax legislation. Pub. L. No. 108-357, § 821(a), Title VIII, Subtitle B, Part I, 118 Stat. 1418, 1586.

Our take is the FBAR statute is part of the IRS's machinery for the collection of federal taxes; thus it is an act "providing for internal revenue" within the meaning of 28 U.S.C. § 1295(a)(2). Accordingly we conclude the Federal Circuit would not have exclusive jurisdiction over this appeal even if the District Court's jurisdiction were based in part on the Little Tucker Act.

Although we leave open whether Bedrosian's initial claim created original jurisdiction in the District Court, we are satisfied it had jurisdiction to render the judgment under review and we have appellate jurisdiction under 28 U.S.C. § 1291.

## III.   Discussion

The District Court's judgment for Bedrosian was based on its ruling that the Government did not prove Bedrosian's failure to file an accurate Report in 2007 was "willful." The Government raises three distinct claims of error, but we need address only one to resolve this appeal—namely, whether

11

the District Court evaluated Bedrosian's conduct under the correct legal standard for willfulness.[3]

## A. Standard of Review

There is little on which the parties agree. This includes the applicable standard of review. Bedrosian contends we should review the District Court's determination of non-willfulness for clear error because it was an essentially factual determination. The Government counters that we should review *de novo* the legal analysis underlying the District Court's determination because the analysis is a purely legal question. Par for the course is that the parties speak past one another in their analyses, yet the issue is nuanced.

We have not directly addressed what standard of review applies to a district court's willfulness determination under the FBAR statute. In the context of other civil penalties, we have held that a district court's determination of willfulness is a primarily factual determination that is reviewed for clear error. *See Pignataro v. Port Auth. of N.Y. & N.J.*, 593 F.3d 265, 273 (3d Cir. 2010) ("Whether a violation of the FLSA is willful is a question of fact that is reviewed for clear error."). Similarly, we have held that the Tax Court's determination of willfulness in tax matters is

---

[3] The Government's other two claims of error are that (1) the District Court unduly weighed Bedrosian's subjective motivations when assessing willfulness, and (2) it clearly erred in finding that Bedrosian did not know he owned a second foreign bank account in Switzerland. Given our disposition of the appeal, we need not directly address either of these claims and leave it to the District Court if it needs to do so on remand.

reviewed for clear error. *See Estate of Spear v. Comm'r*, 41 F.3d 103, 114 (3d Cir. 1994). And the Supreme Court has held that clear error review applies to a trial court's determination of "willful neglect" in the context of civil penalties for failure to pay federal taxes. *See United States v. Boyle*, 469 U.S. 241, 249 n.8 (1985); *accord E. Wind Indus., Inc. v. United States*, 196 F.3d 499, 504 (3d Cir. 1999).

We follow suit and hold that a district court's determination in a bench trial as to willfulness under the FBAR statute is reviewed for clear error. Moreover, this aligns with a broader line of case law in our Circuit extending clear error review to similar factual determinations. *See, e.g.*, *United States v. Brown*, 631 F.3d 638, 642 (3d Cir. 2011) (applying "clear error" review to district court's determination as to police officer's "reckless disregard for the truth"); *United States v. Richards*, 674 F.3d 215, 223 (3d Cir. 2012) (whether public official held "high-level decision-making" or "sensitive" position reviewed for clear error); *In re Frescati Shipping Co., Ltd.*, 718 F.3d 184, 211 (3d Cir. 2013) (as "factual issues predominate" in determining negligence, clear error review applies).

On the surface, this should settle the issue. But not quite. Even when we review a trial court's primarily factual determination under a deferential standard of review, we nonetheless have a duty to "correct any legal error infecting [the] decision." *U.S. Bank Nat'l Assoc. ex rel. CWCapital Asset Mgmt., LLC v. Vill. at Lakeridge, LLC*, 138 S. Ct. 960, 968 n.7 (2018). For example, if the record suggests a district court "somehow misunderstood the nature" of the operative inquiry, *id.*, we then decide whether to remand the case to that court for clarification of the basis of its determination or, alternatively, whether to decide the primarily factual issue ourselves. *See Sprint/United Mgmt. Co. v. Mendelsohn*, 552 U.S. 379, 381, 387 & n.3 (2008). In general, the proper

course will be remand unless "the record permits only one resolution of the factual issue." *Id.* at 387 n.3 (quoting *Pullman–Standard v. Swint*, 456 U.S. 273, 292 (1982)).

## B. "Willfulness" under the FBAR Statute

In assessing the inquiry performed by the District Court, we first consider its holding that the proper standard for willfulness is "the one used in other civil contexts—that is, a defendant has willfully violated [31 U.S.C. § 5314] when he either knowingly or recklessly fails to file [a] FBAR." (Op. at 7.)  We agree.  Though "willfulness" may have many meanings, general consensus among courts is that, in the civil context, the term "often denotes that which is intentional, or knowing, or voluntary, as distinguished from accidental, and that it is employed to characterize conduct marked by careless disregard whether or not one has the right so to act." *Wehr v. Burroughs Corp.*, 619 F.2d 276, 281 (3d Cir. 1980) (quoting *United States v. Illinois Central R.R.*, 303 U.S. 239, 242–43 (1938)) (internal quotation marks omitted).  In particular, where "willfulness" is an element of civil liability, "we have generally taken it to cover not only knowing violations of a standard, but reckless ones as well." *Fuges v. Sw. Fin. Servs., Ltd.*, 707 F.3d 241, 248 (3d Cir. 2012) (quoting *Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 57 (2007)).  We thus join our District Court colleague in holding that the usual civil standard of willfulness applies for civil penalties under the FBAR statute.

This holds true as well for recklessness in the context of a civil FBAR penalty.  That is, a person commits a reckless violation of the FBAR statute by engaging in conduct that violates "an objective standard:  action entailing 'an unjustifiably high risk of harm that is either known or so obvious that it should be known.'" *Safeco*, 551 U.S. at 68 (quoting *Farmer v. Brennan*, 511 U.S. 825, 836 (1994)).  This

14

holding is in line with other courts that have addressed civil FBAR penalties, *see, e.g.*, *United States v. Williams*, 489 F. App'x 655, 658 (4th Cir. 2012), as well as our prior cases addressing civil penalties assessed by the IRS under the tax laws, *see, e.g.*, *United States v. Carrigan*, 31 F.3d 130, 134 (3d Cir. 1994). With respect to IRS filings in particular, a person "recklessly" fails to comply with an IRS filing requirement when he or she "(1) clearly ought to have known that (2) there was a grave risk that [the filing requirement was not being met] and if (3) he [or she] was in a position to find out for certain very easily." *Id.* (quoting *United States v. Vespe*, 868 F.2d 1328, 1335 (3d Cir. 1989) (internal quotation omitted)).

### C. The District Court's evaluation of Bedrosian's willfulness

So did the District Court use the proper standard to evaluate Bedrosian's conduct? It first compared his conduct to the conduct of other individuals in recent cases who have been the subject of civil FBAR penalties. Based primarily on those comparisons, it concluded that Bedrosian did not act willfully. In doing so, the Court's discussion and distinction of prior FBAR cases imply the ultimate determination of non-willfulness was based on findings related to Bedrosian's subjective motivations and the overall "egregiousness" of his conduct, which are not required to establish willfulness in this context.

The remainder of the District Court's opinion does not dispel our concern. Although it discusses whether Bedrosian acted knowingly, it did not consider whether, when his 2007 FBAR filing came due, he "(1) clearly ought to have known that (2) there was a grave risk that [an accurate FBAR was not being filed] and if (3) he was in a position to find out for certain very easily." *Carrigan*, 31 F.3d at 134 (quoting

15

*Vespe*, 868 F.2d at 1335 (internal quotation omitted)). The Court thus leaves the impression it did not consider whether Bedrosian's conduct satisfies the objective recklessness standard articulated in similar contexts.

Although we would afford clear error review to an ultimate determination as to recklessness, we cannot defer to a determination we are not sure the District Court made based on our view of the correct legal standard. We therefore remand for further consideration and to render a new judgment. *See Mendelsohn*, 552 U.S. at 381, 387 & n.3.

\* \* \* \* \*

The Federal Circuit does not have exclusive jurisdiction under 28 U.S.C. § 1295(a)(2) to review appeals from a district court's final judgment on a claim against the Government for recovery of a civil FBAR penalty. We leave open the question whether such a claim, standing alone, would be within the original jurisdiction of the district courts, at least where the taxpayer has not paid the full penalty before filing suit. We further hold the standard of willfulness under the FBAR statute refers to the civil willfulness standard, which includes both knowing and reckless conduct. Because we are unsure whether the District Court evaluated Bedrosian's conduct under this objective standard, we remand the case for further proceedings consistent with this opinion.