**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

—————————

No. 21-1583

—————————

ARTHUR BEDROSIAN,

                                            Appellant

v.

THE UNITED STATES OF AMERICA, DEPARTMENT
OF THE TREASURY, INTERNAL REVENUE SERVICE

—————————————

Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. Civil Action No. 2-15-cv-05853)
District Judge: Honorable Michael M. Baylson

—————————————

Argued on March 2, 2022

Before: McKEE, AMBRO, and SMITH, Circuit Judges

(Opinion filed: July 22, 2022)

Ian M. Comisky **[Argued]**
Siana Danch
Patrick J. Egan
Beth L. Weisser
Fox Rothschild
2000 Market Street
20th Floor
Philadelphia, PA 19103

Counsel for Appellant

Paul A. Alluis **[Argued]**
Michael J. Haungs
United States Department of Justice
Tax Division
950 Pennsylvania Avenue, N.W.
P.O. Box 502
Washington, DC 20044

Francesca Ugolini
United States Department of Justice
Tax Division
Room 4633
950 Pennsylvania Avenue, N.W.
P.O. Box 502
Washington, DC 20044

Counsel for Appellee

———————

OPINION OF THE COURT

———————

**AMBRO**, Circuit Judge

The Bank Secrecy Act, 31 U.S.C. § 5311 *et seq.*, and its implementing regulations require certain individuals with foreign financial interests to file annual disclosures with the U.S. Treasury Department. Those failing to file or filing inaccurate reports are subject to hefty penalties. Take Appellant Arthur Bedrosian's experience. In 2008, he filed an inaccurate Report of Foreign Bank and Financial Accounts (FBAR) with the Government, omitting from the report the larger of his two Swiss bank accounts. If this omission was accidental, the IRS could fine Bedrosian up to $10,000. But if he willfully filed an inaccurate FBAR, the penalty skyrockets: the greater of $100,000 or half the balance of the undisclosed account at the time of the Bank Secrecy Act violation. Believing Bedrosian's omission was willful, the IRS took the latter option and imposed a $975,789.17 penalty—by its calculation, half the balance of Bedrosian's undisclosed account.

Following Bedrosian's refusal to pay the full assessed penalty, the IRS filed a claim in federal court to collect. A bench trial, appeal, and remand ended with the District Court finding Bedrosian's omission willful and ordering him to pay the IRS penalty in full. Now on appeal again, Bedrosian claims the Court erred by finding his conduct willful and in calculating the penalty amount. We affirm the Court's willfulness finding. And while we agree the Government failed to provide sufficient evidence at trial showing its $975,789.17 penalty was no greater than half his account balance, Bedrosian admitted this fact during opening statements and thus relieved the Government of its burden of proof. We therefore affirm the District Court's judgment.

## I. Background

Arthur Bedrosian held two bank accounts with the Union Bank of Switzerland (UBS). The first he opened while a young pharmaceutical sales executive so he could have easy access to cash when traveling overseas. The second he acquired decades later after accepting a loan and investment proposal from the bank. He disclosed neither to the Federal Government until 2008, despite his accountant telling him years earlier that he was breaking the law by failing to note a foreign account on his personal tax returns.

When Bedrosian finally disclosed his foreign holdings in the required FBAR, he left out a key piece of information. The filed form listed just one Swiss bank account with a balance of less than $1 million, even though he later admitted knowing his holdings at UBS were "over a million dollars." Appx. at 12, 137. The form also failed to reflect Bedrosian's ownership of a second Swiss bank account.

These omissions eventually surfaced, and the IRS assessed the maximum penalty against Bedrosian for willfully filing an inaccurate FBAR: 50% of the balance of the undisclosed account at the time of the violation, which it calculated to be a $975,789.17 penalty. He refused to pay. The dispute thus arrived at federal court when the IRS filed a claim to collect its civil penalty.[1]  *See* 31 U.S.C. § 5321(b)(2).

---

[1] Bedrosian also brought his own suit for unlawful exaction. *Bedrosian v. United States*, 912 F.3d 144, 149 (3d Cir. 2018). Yet we expressed skepticism about our jurisdiction over that claim. *Id.*  Instead, we focused on the Government's counterclaim. *Id.* at 150.

4

At first, Bedrosian prevailed. After a one-day bench trial, the District Court found the Government failed to prove he willfully filed an inaccurate FBAR. The evidence, it said, did not reflect "conduct meant to conceal or mislead or a conscious effort to avoid learning about the reporting requirements." Appx. at 598 (internal quotation marks omitted). So the omission of the second Swiss account was, if anything, negligent.

Bedrosian's victory was short-lived. On appeal, we remanded after explaining "willfulness" for an FBAR violation was more expansive (and less forgiving) than the District Court may have allowed. *Bedrosian v. United States*, 912 F.3d 144, 153 (3d Cir. 2018). At bottom, willfulness includes not only knowing, but reckless, conduct. *Id.* at 152. And, we said, courts should use an objective standard to determine whether a person knew or should have known about an "unjustifiably high risk of harm." *Id.* at 152–53 (quoting *Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 68 (2007)). In layman's language, if the Government could show Bedrosian (1) "clearly ought to have known" (2) "there was a grave risk" the FBAR filing requirement "was not being met," and if (3) he "was in a position to find out for certain very easily," it would satisfy the willfulness element. *Id.* at 153 (quoting *United States v. Carrigan*, 31 F.3d 130, 134 (3d Cir. 1994)). Because we were unsure whether the Court applied this test, we remanded "for further proceedings consistent with our opinion" and for the Court to "render a new judgment." *Id.* at 147, 153.

The IRS prevailed on remand. The District Court said its earlier decision focused too heavily on Bedrosian's subjective intent. But after reevaluating the trial record from an objective viewpoint, it determined Bedrosian acted willfully because he "recklessly disregarded the risk that his FBAR was

5

inaccurate." Appx. at 11. The Court also ordered him to pay the penalty in the amount the IRS calculated (plus interest) because the agency had "not abused its discretion in the amount of the penalty imposed." *Id.* at 17. He now appeals.

## II. Analysis[2]

The amount of a civil penalty for a violation of the Bank Secrecy Act depends on three things: (1) whether the violation was willful, (2) the calculation of the maximum penalty permitted by law, and (3) the IRS's discretionary decision whether to assess a penalty at or below the statutory maximum. 31 U.S.C. § 5321(a)(5). This appeal focuses on the first two components. Bedrosian argues, first, that the District Court clearly erred in finding his conduct willful, and second, that the Court incorrectly affirmed a penalty beyond what the IRS proved was permitted by law. We address each in turn.

## A. Willfulness

So far, Bedrosian's case has turned mainly on the meaning of "willfulness" in the penalty provisions for violations of the Bank Secrecy Act. As already explained, we set out the definition of "willfulness" in *Bedrosian* and left it to the District Court to apply that definition as it reconsidered the trial evidence. 912 F.3d at 153–54. The Court did so— making supplemental factual findings where needed—and concluded Bedrosian's conduct was indeed willful. Bedrosian now challenges that finding on two fronts: (1) the Court

[2] As we explained in *Bedrosian*, the District Court had jurisdiction under 28 U.S.C. § 1345. 912 F.3d at 150. And we have appellate jurisdiction under 28 U.S.C. § 1291 to review the Court's final judgment. *Id.*

6

exceeded the scope of the remand by making supplemental findings that led to its conclusion he acted willfully, and (2) his conduct was not willful. We disagree on both.

It is unremarkable to say that, on remand, a district court must comply with the "letter and spirit of the mandate" issued by the court of appeals. *Bankers Tr. Co. v. Bethlehem Steel Corp.*, 761 F.2d 943, 949 (3d Cir. 1985). So what was the scope of our *Bedrosian* mandate? Bedrosian insists we remanded only "to confirm that the District Court's result would be the same under the now-settled standard," *not* for it to reopen the evidentiary record and make or reconsider factual findings. Bedrosian Br. at 26. But we read our opinion differently.

*Bedrosian* imposed few remand restraints on the District Court. After stating our willfulness rule, because we were "unsure whether the District Court evaluated Bedrosian's conduct under this objective standard," we decided it was best to give the trial court the opportunity to reassess the evidence. 912 F.3d at 153–54. So we "remand[ed] the case for further proceedings consistent with [our] opinion." *Id.* at 54. We placed no limitation on these proceedings. Instead, our opinion actually anticipated that the Court would reconsider its factual findings and its judgment. For example, after answering the legal question in the appeal, we declined to address potential factual errors raised by the Government, choosing instead to "leave it to the District Court if it needs to [correct these issues] on remand." *Id.* at 151 n.3. We then "remand[ed] for further consideration" and for the Court "to render a new judgment" (allowing it to change its mind on its ultimate holding). *Id.* at 153. Though our opinion did not explicitly state the Court could review the full record and make supplemental factual

findings, doing so was well within the "spirit of the mandate." *Bankers Tr. Co.*, 761 F.2d at 949.

We also are not convinced the District Court erred in finding Bedrosian's conduct willful. We review this factual determination for clear error. *Bedrosian*, 912 F.3d at 152. It "exists only if a finding is completely devoid of a credible evidentiary basis or bears no rational relationship to the supporting data." *Interfaith Cmty. Org. v. Honeywell Int'l, Inc.*, 399 F.3d 248, 254 (3d Cir. 2005) (internal quotation marks omitted) (alterations adopted).

Here the Court's rational decision was grounded in credible evidence. Its thorough and well-reasoned opinion reconsidered whether—based on the evidence presented at the bench trial—Bedrosian "clearly ought to have known that . . . there was a grave risk that an accurate FBAR was not being filed and if . . . he was in a position to find out for certain very easily." *Bedrosian*, 912 F.3d at 153 (internal quotation marks omitted) (alterations adopted). To aid this analysis, the Court made five supplemental findings:

1. "Bedrosian's cooperation with the Government . . . began only after he was exposed as having hidden foreign accounts." Appx. at 5.

2. "Shortly after filing the 2007 FBAR, Bedrosian sent two letters to his Swiss bank directing closure of two accounts, but only one of these accounts had been disclosed on his FBAR." *Id.* at 5; *see also id.* at 139.

3. "Bedrosian does not dispute he saw an article in The Wall Street Journal about the federal

8

government tracing mail coming into the United States and was therefore alerted to the possibility of the United States finding out about his foreign bank accounts if the bank sent information through the mail." *Id.*; *see also id.* at 96.

4. "Bedrosian's Swiss accounts were subject to a 'mail hold.' He does not dispute the existence of the mail hold or that he signed a form and paid a fee to the bank for this benefit." *Id.* at 6; *see also id.* at 135.

5. "Bedrosian also acknowledged that he was aware of the significant amount of money held in his foreign bank accounts." *Id.* at 6; *see also id.* at 137.

The trial record supported each finding.

Relying on these facts, the Court found Bedrosian acted recklessly (and therefore willfully under our test) because he "knew or should have known the form which he signed was inaccurate." *Id.* at 13. He checked a box on the FBAR reflecting there was less than $1 million in his account. Yet at trial he said he knew his main account had "over a million dollars in it." *Id*. at 12, 137. So even if he did not know he had two accounts, the FBAR stating the account held less than a million dollars "should have prompted him to investigate further, which he could have done easily by contacting the bank." *Id.* at 12. Indeed, had he "looked at the forms he signed," Bedrosian "should have noticed the amount stated for the accounts was not accurate." *Id.* Further, he was warned by his accountant that he was breaking the law by not disclosing

9

his accounts to the Government, yet he made no change. *Id*. at 12, 98.

Applying the *Bedrosian* definition of willfulness to these facts, the District Court properly determined Bedrosian acted willfully by failing to disclose his second Swiss bank account on the FBAR.[3] We certainly cannot conclude it clearly erred.

One further note. Bedrosian invites us to revisit our *Bedrosian* test for willfulness, but we decline to do so under the law-of-the-case doctrine. That doctrine prevents reconsideration of legal issues already decided in earlier stages of a case. *Pub. Int. Rsch. Grp. v. Magnesium Elektron*, 123 F.3d 111, 116 (3d Cir. 1997). Though Bedrosian correctly notes an exception when the earlier decision was "clearly erroneous," *id.* at 117, he identifies no on-point binding precedent with which *Bedrosian* conflicts,[4] *see Pardini v.*

---

[3] Bedrosian also criticizes the District Court for the analogies it drew between his case and the Fourth Circuit's decision in *United States v. Horowitz*, 978 F.3d 80 (4th Cir. 2020), where that Court found the defendant's FBAR violation willful. Even if he is correct that the District Court incorrectly likened his case to *Horowitz*, this makes no difference. *Horowitz* is an out-of-circuit, non-binding precedent, so the similarity or dissimilarity of his case is irrelevant. All that matters here is that the District Court found Bedrosian's conduct satisfied our test for willfulness.

[4] Even had he shown our decision was wrong, it likely would be up to our Court *en banc*, not our panel, to modify that decision. *See* 3d Cir. I.O.P. 9.1. This is especially true now that another of our Court's precedential opinions has adopted and applied the test we set out in *Bedrosian*. *See United States v. Collins*, 36 F.4th 487, 491 (3d Cir. 2022).

*Allegheny Intermediate Unit*, 524 F.3d 419, 426–27 (3d Cir. 2008) (noting we would not have to follow the law-of-the-case doctrine if a prior opinion clearly erred by disregarding binding precedent).  Our earlier decision thus stands.

## B.  Maximum Penalty

Willfulness, though, is just the first hurdle the Government must overcome to collect the penalty it assessed against Bedrosian.  The statute also limits the IRS's authority in other ways, particularly by setting a maximum penalty.  Once a violation of the Bank Secrecy Act is found to be willful, the IRS has two options: impose up to the greater of a $100,000 penalty or assess a penalty of up to "50 percent of the amount . . . [of] the balance in the account at the time of the violation." 31 U.S.C. § 5321(a)(5)(C), (D).  The Government has discretion to assess a penalty up to the statutory maximum.

The maximum penalty amount—like willfulness—is an element of the cause of action to collect the penalty.  *See* 31 U.S.C. § 5321(a)(5)(C).  So, also like a determination of willfulness, it is a factual finding the District Court must make based on the evidence presented at trial.  Once that statutory maximum is properly calculated, the Court may only set aside the IRS's discretionary determination of whether to impose the maximum or some lesser amount "if it was arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law."  *United States v. Collins*, 36 F.4th 487, 493 (3d Cir. 2022) (*Collins II*)[5]; *see also Frisby v. U.S. Dep't*

---

[5] In *Collins*, the statutory maximum penalty was not at issue (as it is here) because the District Court found the defendant admitted to his account balances.  *See* No. 18-cv-1069, 2021 WL 456962, at *1–2 (W.D. Pa. Feb. 8, 2021) (*Collins I*); *see*

11

*of Hous. & Urb. Dev.*, 755 F.2d 1052, 1055 (3d Cir. 1985) ("Where Congress has granted an agency discretion, the resulting decisions are subject to judicial review only to determine whether the Secretary has exceeded statutory authority or has acted arbitrarily.").

Facts underlying the calculation of the maximum civil penalty—in this instance, the account balance—must be proven by a preponderance of the evidence. *See, e.g.*, *Herman & MacLean v. Huddleston*, 459 U.S. 375, 389–90 (1983) (noting the burden of proof in civil cases is preponderance of the evidence and "imposition of even severe civil sanctions . . . has been permitted after proof by a preponderance of the evidence"). And because the Government brought this civil action under 31 U.S.C. § 5321(b)(2) "to recover a civil penalty," it bore the burden of proving the account balance at trial—again, in the same way it did the element of willfulness.[6]

---

*Collins II*, 36 F.4th at 494 ("Collins's penalty is well below the amount permitted by law."). Indeed, the IRS imposed a penalty 75% below the maximum penalty in that case, so there was no argument that the IRS exceeded its statutory authority. *Collins II*, 36 F.4th at 494; *see also Kimble v. United States*, 991 F.3d 1238, 1242, 1243–44 (Fed. Cir. 2021) (reviewing for abuse of discretion the IRS's decision to impose the maximum civil FBAR penalty and not lessen the penalty due to mitigating factors).

[6] The Government must prove the account balance only because it chose the option under the statute to penalize Bedrosian at 50% of the balance of his undisclosed account. Had the Government chosen the other maximum penalty option—$100,000 for each violation—the account balance

The Government contends Bedrosian's undisclosed bank account held $1,951,578.34, making its $975,789.17 penalty lawful. But Bedrosian claims it failed to prove this fact, particularly because it pulls this figure from arguably inadmissible evidence. And, he says, the District Court abused its discretion by admitting and ultimately relying on this evidence to uphold the IRS's imposition of the civil penalty.

### 1. Admissibility of Evidence

At trial, the Government presented no live testimony discussing Bedrosian's bank accounts.[7] Instead, at the close of its case and without a witness, it tried to introduce a series of documents, including Exhibit R (the record the Government claims establishes the balance in Bedrosian's Swiss account), Exhibit S (showing the Swiss Franc to U.S. Dollar exchange rates for 2006 through 2011), and Exhibit T (converting the account balances in Exhibit R into U.S. Dollars using the Exhibit S exchange rates). Bedrosian objected, claiming there was a lack of foundation to introduce these exhibits. And the Court reserved its ruling on the admissibility of the documents until the parties provided more briefing. Ultimately, it only resolved this issue after our remand, when it appears to have

---

would be irrelevant. Instead, it would only need to prove a willful violation of the Bank Secrecy Act.

[7] The Government offered only one witness: an IRS employee who prepared the letter assessing the penalty against Bedrosian. She explained that she had no role in calculating the penalty amount and no idea how the penalty was calculated. She simply received a sheet of paper from an IRS agent stating the penalty amount and entered it into the system to generate the official penalty certificate.

admitted the documents and relied on them to uphold the IRS's penalty.

The legitimacy of the IRS's penalty centers on the admissibility and the contents of Exhibit R. This exhibit consists of a single page and appears to be a record of some account. *See* Appx. at 528. The heading reads "monthly balances" and below it is a monthly breakdown of numbers from 2001 to 2008. On the left side of the page is a string of numbers, "D3.US.642/174-D1540_2_00001," which looks like a Bates stamp identifier from discovery.



*See id.*

Exhibit R is admissible only if relevant. *See* Fed. R. Evid. 402. And here the relevance of this document hinges on whether it reflects the balance of Bedrosian's undisclosed Swiss bank account, as the Government claims it does. After all, the random account statement of some other person

14

banking with UBS or any other bank would have no bearing on what civil penalty Bedrosian owes the IRS. The Government, though, offered no foundation tying Bedrosian or his UBS account to this exhibit.[8]

Take a closer look at the exhibit. There is no name on the page. No account number. Not even a bank mentioned. There are numbers on the page, but no listed currency. Presumably because it is a "monthly statement," it is showing an account balance (though it could even be a balance for an unpaid bill). And are the stated balances in Swiss Francs? U.S. Dollars? Euros? We simply don't know. There is a Bates number on the side of the page stating, "D3.US.642/174-D1540_2_00001," but nothing in the record explains what that number means.[9] Indeed, because the Government tried to enter

---

[8] The Government explains that Exhibit R was a self-authenticating business record that could be submitted into evidence without a live witness under Federal Rule of Evidence 902(12) because it was accompanied by a custodian certification (Exhibit U). Perhaps so. But authenticity and relevance are "two separate matters." *United States v. Southard*, 700 F.2d 1, 23 (1st Cir. 1983). A business record may be self-authenticating, but there must still be "testimony linking the [defendant] with the documents" to establish relevance. *Id.*; *see also United States v. Browne*, 834 F.3d 403, 410 (3d Cir. 2016).

[9] For the first time on appeal, the Government points to the Bates stamp numbers to tie this document to Bedrosian. It claims other exhibits with similar Bates numbers "confirm that this Bates range concerns Bedrosian." IRS Br. at 62. The problem, though, is it failed to lay this foundation through testimony at trial. This is simply a hypothesis; there is no evidence explaining the Bates number ranges or tying these

15

Exhibit R into evidence without a witness laying a foundation, the Court had no help identifying or explaining its contents.

All we know from the record is Exhibit R shows someone's "monthly balance" for something somewhere. The Government's attorneys in briefing now tell us it is a UBS "statement showing monthly account balances for Bedrosian's 6137 account stated in Swiss francs," IRS Br. at 60–61, but nothing in evidence at trial supports that claim. And without the Government laying the foundation to show Exhibit R states the monthly balances for Bedrosian's unreported bank account, it is just a slip of paper with no relevance to this case. We therefore conclude the District Court should not have admitted Exhibit R without further foundation. And, consequently, this document cannot confirm that the IRS's $975,789.17 penalty was 50% of Bedrosian's account balance.

## 2. Judicial Admissions

Exhibit R was the only evidence the Government submitted that purportedly showed the balance of Bedrosian's undisclosed account. But it isn't the only indication in the record of the account balance. The Government also argues Bedrosian's counsel admitted that the account contained $1,951,578.34, and that this was a binding judicial admission.

Judicial admissions are "admissions in pleadings, stipulations or the like which do not have to be proven in the same litigation." *Anderson v. Commissioner*, 698 F.3d 160, 167 (3d Cir. 2012) (internal quotation marks omitted) (alterations adopted). They must be "unequivocal," *id.*, or as

---

Bates numbers to Bedrosian. The Government cannot rectify this lack of foundation now on appeal.

16

other Circuits have said, "intentional, clear, and unambiguous," *In re Motors Liquidation Co.*, 957 F.3d 357, 361 (2d Cir. 2020) (collecting cases).

Here the Government identifies four statements Bedrosian made through his counsel in briefing or at trial that it believes constituted judicial admissions:

1. Bedrosian's Response to the Government's Statement of Undisputed Material Facts in Support of Summary Judgment: "Admit[ting]" that "the penalty was calculated as 50% of Bedrosian's account balance for the account ending in 6167, or fifty percent of $1,951,578.34, which equals $975,789.17." Doc. 22-3 ¶ 51; Doc. 26-1 ¶ 51.

2. Bedrosian's Statement of Undisputed Material Facts in Support of Summary Judgment: "On or about July 18, 2013 the IRS imposed upon the plaintiff a willful penalty for failure to file[] [an FBAR]. . . . The maximum value of the account was $1,951,578.34 and the amount of the penalty was $975,789.19—half the value of the account and the highest penalty that could be imposed." Doc. 25-1 ¶ 35–36.

3. Bedrosian's Trial Brief: "On or about July 18, 2013 the IRS imposed upon the plaintiff a willful penalty for failure to file[] [an FBAR]. . . . The maximum value of the account was $1,951,578.34 and the amount of the penalty was $975,789.19—half the value of the account and

the highest penalty that could be imposed." Doc. 49 at 5.

4. Bedrosian's Opening Statement: "Now, the government states and we concede that at the time there was about 2 million U.S. dollars in that account give or take, you know, you have the exchange rate and all, it's like 2.6 Swiss francs and they'll have a witness that gets up and does the math, but it works out to about around 2 million dollars." Appx. at 66.

The District Court has discretion to treat a party's statement as a judicial admission and to bind the party to that admission. *See Cooper v. Carl A. Nelson & Co.*, 211 F.3d 1008, 1014 (7th Cir. 2000); *Singer v. State Farm Mut. Auto. Ins. Co.*, 116 F.3d 373, 376 (9th Cir. 1997). But here the Court did not decide whether these were judicial admissions, finding instead that the Government's evidence (which we have now held inadmissible) was sufficient.

Still, even though the District Court did not address this argument, we "may affirm on any basis supported by the record, even if it departs from the District Court's rationale." *TD Bank N.A. v. Hill*, 928 F.3d 259, 270 (3d Cir. 2019). And while arguably some of the statements Bedrosian made in the District Court proceedings are not judicial admissions, the statement made in opening argument acknowledged the true state of the facts. *See, e.g.*, *Glick v. White Motor Co.*, 458 F.2d 1287, 1291 (3d Cir. 1972) ("[A]n admission of counsel during the course of trial is binding on his client."); *United States v. McKeon*, 738 F.2d 26, 30 (2d Cir. 1984) ("The binding effect on a party of a clear and unambiguous admission of fact made by his or her attorney in an opening statement was

18

acknowledged by the Supreme Court . . . and has been frequently recognized in subsequent lower court decisions involving civil cases."). The concession that "there was about 2 million U.S. dollars" in the undisclosed account, Appx. at 66, makes the IRS's $975,789.17 penalty below the statutory maximum (50% of the account balance). We therefore affirm the District Court's judgment on this alternative ground.

\*     \*     \*

Arthur Bedrosian willfully filed an inaccurate FBAR. So the Government could validly penalize him under the penalty provisions for willful violations of the Bank Secrecy Act. What the Government could not do, though, is penalize him beyond the maximum statutory limits. The Government's evidence at trial failed to prove by a preponderance that Bedrosian's undisclosed bank account held $1,951,578.34. But acknowledging at trial an account balance of at least that much saves the need for a remand to make a finding of the obvious. We thus affirm.

19