# United States Court of Appeals for the Federal Circuit

———————————

**ALICE KIMBLE,**
*Plaintiff-Appellant*

**v.**

**UNITED STATES,**
*Defendant-Appellee*

———————————

2019-1590

———————————

Appeal from the United States Court of Federal Claims in No. 1:17-cv-00421-SGB, Senior Judge Susan G. Braden.

———————————

Decided: March 22, 2021

———————————

PAULA SCHWARTZ FROME, Garden City, NY, argued for plaintiff-appellant.

GEOFFREY KLIMAS, Tax Division, United States Department of Justice, Washington, DC, argued for defendant-appellee. Also represented by TRAVIS A. GREAVES, GILBERT STEVEN ROTHENBERG, DEBORAH K. SNYDER, RICHARD E. ZUCKERMAN.

———————————

Before NEWMAN, LINN, and HUGHES, *Circuit Judges*.

HUGHES, *Circuit Judge*.

This case stems from Alice Kimble's failure to comply with the requirements of the Bank Secrecy Act with respect to her Swiss bank account. After paying a penalty assessed by the IRS, Ms. Kimble brought a claim against the United States for refund of the penalty in the Court of Federal Claims on March 24, 2017. On December 27, 2018, the Court of Federal Claims granted the government's motion for summary judgment. Ms. Kimble timely appealed. For the reasons stated below, we affirm.

I

The relevant factual background of this appeal is undisputed. Ms. Kimble, née Green, is a citizen of the United States. Ms. Kimble's parents, Harold and Frances Green, opened an investment account at the Union Bank of Switzerland (UBS) around or before 1980 and designated Ms. Kimble as a joint owner. According to Ms. Kimble, some of her father's family had been killed in the Holocaust and his parents had fled to the United States to escape persecution. Ms. Kimble avers that her father, Mr. Green, opened the UBS account and maintained it in secret because he feared being persecuted in the United States and needing to flee to another country as his parents had.

Around 1983, Ms. Kimble married Michael Kimble, an investment analyst. About the same time, Mr. Green apprised Michael Kimble of the existence of the UBS account and his desire to preserve its secrecy, and Michael Kimble agreed to respect his wishes. Michael Kimble subsequently advised Mr. Green and—after Mr. Green's death in 1997—Ms. Kimble on the management of the UBS account until at least 2008. Following her father's death, Ms. Kimble signed various agreements directing UBS to, among other things, maintain the account as a numbered account—an account associated with a number rather than a name—and to retain all correspondence about the account at the bank.

While he was married to Ms. Kimble, Michael Kimble prepared the couple's joint federal tax returns. Those tax returns did not report any income derived from the UBS account nor did they disclose the existence of the foreign account. After the couple divorced in 2000, Ms. Kimble hired Steven Weinstein, a certified public accountant, to prepare her income tax returns. Mr. Weinstein never asked Ms. Kimble if she had a foreign bank account, and Ms. Kimble did not volunteer that she owned the UBS account. Accordingly, from at least 2003 to 2008, Ms. Kimble's tax forms did not disclose her ownership of the UBS account or the income she derived from it. Those forms, which Ms. Kimble signed under penalty of perjury, represented that she did not have a foreign bank account and that she had reviewed the tax form. Nonetheless, according to Ms. Kimble, she did not review the accuracy of any federal income tax returns filed on her behalf from 2003 through 2008.

In 2008, Ms. Kimble read an article in the New York Times reporting on the Treasury Department's investigation into UBS for abetting tax fraud with respect to its numbered accounts. Ms. Kimble testified that this was the first time she learned of her obligation to disclose her foreign bank accounts. Ms. Kimble later retained counsel to comply with the foreign reporting requirements. In 2009, UBS entered into a deferred prosecution agreement with the United States that required UBS to unmask its numbered accounts held by United States citizen clients. That same year, Ms. Kimble applied for and was accepted into the Offshore Voluntary Disclosure Program (OVDP), a program designed for taxpayers exposed to potential criminal or substantial civil liability due to a willful failure to report foreign financial assets and pay taxes due stemming from those assets. In 2012, Ms. Kimble and the IRS negotiated an agreement resolving the matter of her undisclosed foreign bank account, which required her to pay a penalty of $377,309. In 2013, Ms. Kimble withdrew from the OVDP and declined to pay the penalty.

After completing its examination of Ms. Kimble's tax filings and her foreign accounts,[1] the IRS determined that Ms. Kimble's failure to report the UBS account was willful and the examiner therefore assessed a penalty of $697,299, representing 50% of the account. Ms. Kimble paid the penalty but sued in the Court of Federal Claims seeking a refund.

The Court of Federal Claims granted summary judgment against Ms. Kimble. In holding that Ms. Kimble violated 31 U.S.C. § 5314, the court found undisputed that, until 2008, Ms. Kimble never disclosed the account to her accountant nor inquired about any need to report foreign income, that she indicated on her tax returns that she had no foreign accounts, and that she did not review her tax returns but signed that she had reviewed them and that they were correct under penalty of perjury. The court held that these actions constituted a "reckless disregard" for the legal duty to disclose foreign bank accounts and that Ms. Kimble's conduct was therefore "willful" under § 5321(a)(5). The Court of Federal Claims also found no dispute of material fact that the IRS did not abuse its discretion in setting a 50% penalty and noted that Ms. Kimble had waived any Eighth Amendment arguments by failing to plead them.

Ms. Kimble appeals.

## II

We review de novo the Court of Federal Claims' grant of the government's motion for summary judgment and the court's denial of Ms. Kimble's cross-motion. *Premier Off. Complex of Parma, LLC v. United States*, 916 F.3d 1006, 1011 (Fed. Cir. 2019). We review a Court of Federal Claims

---

[1]   Ms. Kimble also maintained an undisclosed bank account in France with the Hong Kong and Shanghai Banking Corporation which is not relevant to this appeal.

willfulness determination for clear error. *Norman v. United States*, 942 F.3d 1111, 1115 (Fed. Cir. 2019). We set aside an agency's penalty selection only if it was arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law. *See, e.g.*, *Ninestar Tech. Co. v. Int'l Trade Comm'n*, 667 F.3d 1373, 1379 (Fed. Cir. 2012).

Congress enacted the Bank Secrecy Act (BSA) to ensure that citizens paid taxes on income earned abroad. *See* Pub. L. No. 91-508, 84 Stat. 1114 (1970). The regulations implementing 31 U.S.C. § 5314, a codification of the BSA, require any U.S. citizen "having a financial interest in, or signature or other authority over, a bank, securities or other financial account in a foreign country" to report certain details about the account to the Treasury Department. 31 C.F.R. § 1010.350(a). This report must be made each year by filing a Form TD F 90-22.1, Report of Foreign Bank and Financial Accounts (FBAR). *Id.* § 1010.306(c). An FBAR must be filed "with respect to foreign financial accounts exceeding $10,000 maintained during the previous calendar year." *Id.* The familiar Form 1040, used by every United States resident filing a personal federal income tax return, includes Schedule B, which contains a check-the-box question that puts a taxpayer on notice as to this obligation. *See United States v. Williams*, 489 F. App'x 655, 659 (4th Cir. 2012) (holding that failure to read this question does not change that a taxpayer is on inquiry notice). Schedule B's instructions direct taxpayers to check "Yes" if they had authority over or an interest in a foreign account and provide instruction for taxpayers to file an FBAR if so.

The Secretary of the Treasury may impose a civil penalty for violations of 31 U.S.C. § 5314. *See* 31 U.S.C. § 5321. If the failure to file an FBAR is "willful," the Secretary may impose a penalty up to the greater of either $100,000 or 50 percent of the balance of the account at the time of the violation. 31 U.S.C. § 5321(a)(5).

III

Here, the parties do not dispute that Ms. Kimble failed to disclose a foreign bank account that she was required to disclose. Rather, Ms. Kimble argues that her violation was not "willful." We hold that, based on the undisputed facts, it was not clear error for the Court of Federal Claims to find Ms. Kimble's violation willful.

Contrary to Ms. Kimble's argument that a taxpayer cannot commit a willful violation without "actual knowledge of the obligation to file an FBAR," Appellant's Br. 32, we have held that "willfulness in the context of § 5321(a)(5)(C) includes recklessness," *Norman*, 942 F.3d at 1115. Accordingly, a taxpayer signing their returns cannot escape the requirements of the law by failing to review their tax returns. *Id.* at 1116 ("[W]hether [the taxpayer] ever read her . . . tax return is of no import because '[a] taxpayer who signs a tax return will not be heard to claim innocence for not having actually read the return, as . . . she is charged with constructive knowledge of its contents.'") (quoting *Greer v. Comm'r*, 595 F.3d 338, 347 n.4 (6th Cir. 2010)).

The undisputed facts show that Ms. Kimble knew about the numbered account and took efforts to keep it secret by, among other things, not disclosing the account to her accountant. She did not review her tax returns for 2003-2008, but she represented under penalty of perjury that she had reviewed her tax returns and had no foreign accounts. J.A. 17. In other words, Ms. Kimble had a secret foreign account, she had constructive knowledge of the requirement to disclose that account, and she falsely represented that she had no such accounts. Under these facts, it

was not clear error for the Court of Federal Claims to hold that she committed a willful violation.[2]

## IV

Ms. Kimble argues that, even if she committed a willful violation, she should not have been assessed such a substantial penalty. We now affirm the Court of Federal Claims' holding that the IRS did not abuse its discretion in assessing the statutory maximum civil penalty of 50% of the bank account's value.[3]

## A

Ms. Kimble argues that the severity of the penalty violates the maximum allowed by 31 C.F.R. § 1010.820 and that the Court of Federal Claims erred in holding that the regulation was superseded by 31 U.S.C. § 5321(a)(5)(C). Appellant's Br. 18–19. However, we conclusively resolved this issue in *Norman*, 942 F.3d at 1117 ("Because the 1987 regulation [§ 1010.820] sets forth a maximum willful FBAR penalty that is inconsistent with the maximum penalty mandated by statute [§ 5321(a)(5)], the 1987

---

[2]    Ms. Kimble's reasons for the violation (her subjective belief about the need for secrecy, advice from her ex-husband, etc.) do not alter our inquiry. A taxpayer can be "willful" even if her violation has good reason. *See Bedrosian v. United States*, 912 F.3d 144, 153 (3d Cir. 2018) (inquiring into "subjective motivations and the overall 'egregiousness' of [the taxpayer's] conduct . . . [is] not required to establish willfulness in this context"); *Norman*, 942 F.3d at 1116 ("Actions can be willful even if taken on the advice of another."). And there is no "reasonable cause" exception for willful violations. 31 U.S.C. § 5321(a)(5)(C)(ii).

[3]    While the penalty is the maximum civil penalty under 31 U.S.C. § 5321, it is not the harshest enforcement mechanism in our tax system. *See, e.g.*, 26 U.S.C. § 7201.

regulation is no longer valid."). The trial court correctly held that 31 U.S.C. § 5321(a)(5)(C) sets the penalty for willful violations.

B

Ms. Kimble also contends that the IRS abused its discretion by issuing the maximum civil penalty of 50%, but we affirm the Court of Federal Claims' holding that the IRS was within its discretion.

Ms. Kimble argues that, because the IRS applied the maximum penalty under the statute, the IRS failed to mitigate her penalty. To the contrary, here, the IRS used the mitigation guidelines to determine that the maximum penalty should apply. The Internal Revenue Manual recommends a "Level IV" 50% penalty for willful violations where the account balance is over $1,000,000. I.R.M. § 4.26.16-2; J.A. 512–13. Those criteria were met here.

The IRS guidelines allow for deviation from the recommendations, but the IRS did not find that other circumstances warranted straying from the guidelines. *Id.* We find unpersuasive Ms. Kimble's arguments that the IRS relied on improper facts in making this determination. One factor considered was the individual's connection to a foreign country. Ms. Kimble contends that the account gave her a connection to Switzerland, but we see no error in the Court of Federal Claims' assessment that a property interest in a bank account is not sufficient on its own to establish a significant contact with a foreign country. J.A. 20.

Despite her meetings with bank representatives and the frequency of her transactions with the account, Ms. Kimble argues that she was not an active manager of the account because she followed the advice of her ex-husband. Whether a party follows the advice of another is irrelevant to whether she manages an account, so the IRS did not abuse its discretion in determining that Ms. Kimble actively managed the account. Ms. Kimble also argues that

the IRS improperly determined her to be the sole beneficiary of the account. The IRS made this determination based on her stipulation, but even assuming she was not the sole beneficiary, it is undisputed that she had a direct interest in the account, and Ms. Kimble provides no reason why one must be the sole beneficiary in order to receive the penalty stated in the guidelines.

Given the undisputed facts, the penalty was suggested by the IRS's nonbinding guidelines and was within the statutory authorization. *See* J.A. 512–13; 31 U.S.C. § 5321(a)(5)(C). The Court of Federal Claims did not err in holding that the IRS did not abuse its discretion.

C

Finally, Ms. Kimble argues that the penalty violates the Eighth Amendment as an excessive fine, but this claim was waived. The Court of Federal Claims held that it did not need to address this argument because the Plaintiff did not raise it in her complaint. Ms. Kimble contends that page 45 of her complaint raised the Eighth Amendment by seeking a return of the "excess penalty," but, rather than invoking the Eighth Amendment, this wording fits with her other arguments that the penalty either should have been mitigated or violated IRS regulations. Appellant's Br. 50. The "traditional rule is that once a federal claim is properly presented, a party can make any argument in support of that claim." *Lebron v. Nat'l R.R. Passenger Corp.*, 513 U.S. 374, 379 (1995) (citations omitted). But distinct claims are waived if not pled in a complaint. *See Casa de Cambio Comdiv S.A., de C.V. v. United States*, 291 F.3d 1356, 1366 (Fed. Cir. 2002) ("[W]e need not address Casa's agency theory because . . . [n]o mention of this theory appears in Casa's complaint."). Accordingly, we will not consider this claim on appeal.

V

Because we agree with the Court of Federal Claims that Ms. Kimble's conduct was willful and that the IRS did not abuse its discretion in assessing a 50% penalty, we affirm.

**AFFIRMED**