**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 21-1935
_____

UNITED STATES OF AMERICA

v.

RICHARD COLLINS,
     Appellant
_____

On Appeal from the United States District Court
for the Western District of Pennsylvania
(D.C. No. 2-18-cv-01069)
District Judge: Hon. Cathy Bissoon
_____

_____

Argued on April 27, 2022

Before: HARDIMAN, RENDELL, and FISHER, *Circuit
Judges*

(Filed: June 6, 2022)

Jed Silversmith [Argued]
P.O. Box 2762

Philadelphia, PA 19118

*Counsel for Appellant*

David A. Hubbert
Julie C. Avetta [Argued]
Arthur T. Catterall
United States Department of Justice
Tax Division
Room 4333
950 Pennsylvania Avenue, N.W.
P.O. Box 502
Washington, DC 20044

Cyndi K. Chung
Office of United States Attorney
700 Grant Street
Suite 4000
Pittsburgh, PA 15219

*Counsel for Appellee*

_____

OPINION OF THE COURT
_____

HARDIMAN, *Circuit Judge.*

Richard Collins appeals the District Court's order imposing civil penalties for his failure to report ownership of multiple foreign bank accounts. Because the Court did not err

when it held that Collins's failure to report these accounts was a willful violation of the Bank Secrecy Act, we will affirm.

I

Enacted in 1970, the Bank Secrecy Act requires United States citizens to report interests in foreign accounts with a value exceeding $10,000. 31 U.S.C. § 5314; 31 C.F.R. §§ 1010.306(c), 1010.350(a); *see* Pub. L. No. 91-508, 84 Stat. 1114 (1970). Citizens must disclose these accounts through a Form TD–F 90–22.1, Report of Foreign Bank and Financial Accounts (FBAR). An FBAR is not a tax form and need not be filed with a tax return. *See* 31 C.F.R. §§ 1010.306(c), 1010.350(a). Yet the Internal Revenue Service has the authority to enforce reporting requirements, investigate violations, and assess and collect penalties. *Id.* § 1010.810(g). Congress also has authorized the Secretary of the Treasury to impose "a civil money penalty on any person" who fails to report a foreign account. 31 U.S.C. § 5321(a)(5)(A).

There is no dispute in this case that Richard Collins failed to report his foreign accounts. Collins is a dual citizen of the United States and Canada who, since the 1960s, has worked as a professor in the United States, France, and Canada. He opened bank accounts in all three countries to deposit his earnings. Collins also opened a Swiss bank account in the 1970s, though he never lived in Switzerland. Since Collins moved to the United States in 1994, he has maintained his foreign accounts and continued to receive small pension contributions into his French and Canadian accounts, which he

3

would periodically sweep into his Swiss account. By late 2007, the balance of his Swiss account exceeded $800,000.

Collins did not report any of his foreign bank accounts until he voluntarily amended his tax returns in 2010. At that time, the IRS accepted Collins into its Offshore Voluntary Disclosure Program, and his accountant prepared amended returns for 2002 to 2009, which yielded modest refunds stemming from large capital losses in 2002. Upon filing the amended returns, Collins withdrew from the Voluntary Disclosure Program, prompting an audit that uncovered an unforeseen issue. Because Collins invested in foreign mutual funds, his Swiss holdings were subject to an additional tax on passive foreign investment companies, 26 U.S.C. § 1291 *et seq.*, which he failed to compute in his amended returns. The IRS audit determined that Collins owed an additional $71,324 for 2005, 2006, and 2007, plus penalties. Collins made payment towards these overdue taxes and associated penalties.

Still worse for Collins, in June 2015 the IRS determined that since he withdrew from the Overseas Voluntary Disclosure Program, Collins was liable for civil penalties under 31 U.S.C. § 5321(a)(5) for his "willful failure" to report foreign accounts. App. 417. The maximum FBAR penalty for the willful failure to report a foreign bank account is the *greater* of $100,000 or 50 percent of the account balance at the time of the violation. *See* 31 U.S.C. § 5321(a)(5)(C)(i), (D)(ii). Fortunately for Collins, the statute grants the agency some discretion, *see id.* § 5321(a)(2)—and specifies a cap for the FBAR penalty, *see id.* § 5321(a)(5)(C)(i). The IRS found Collins eligible for mitigation and assessed a civil penalty

4

totaling $308,064 for 2007 and 2008. After Collins failed to pay, the Government sued to recover the penalty.

The District Court conducted a one-day bench trial and affirmed the agency's penalty calculation. *See United States v. Collins*, 2021 WL 456962, at \*4, \*11 (W.D. Pa. Feb. 8, 2021). The Court found a "decades-long course of conduct, omission and scienter" by Collins in failing to disclose his foreign accounts, *id.* at \*4, before also finding that the IRS's penalty determination was neither arbitrary and capricious nor an abuse of discretion. *Id.* at \*5–7. The Court imposed the same FBAR penalty as the IRS, *id.* at \*11, and under the Federal Claims Collection Act (the Collection Act), 31 U.S.C. § 3717, awarded 1% per annum interest and a 6% per annum penalty for failure to pay pre- and post-judgment. As of the date of the judgment, the interest and penalties totaled $98,200.

Collins filed this timely appeal.

II

The District Court had jurisdiction under 28 U.S.C. §§ 1331, 1345, and 1355 because this matter arises under a federal statute and the United States is the plaintiff seeking to recover civil penalties. We have jurisdiction under 28 U.S.C. § 1291 to review the District Court's final order imposing Collins's FBAR penalty.

III

Collins claims the District Court erred when it found that he willfully failed to report his foreign bank accounts in 2007 and 2008 and that the IRS's penalty calculation was an abuse of discretion. Collins also argues the District Court erred

5

by limiting his discovery regarding the IRS's penalty computation and by imposing interest and penalties pursuant to 31 U.S.C. § 3717. We consider each argument in turn.

A

Collins first challenges the District Court's finding that his failure to report the foreign accounts was willful. That finding was significant because the Bank Secrecy Act caps the penalty at $10,000 if the violation is not willful, 31 U.S.C. § 5321(a)(5)(B)(i). We review the District Court's finding of a willful FBAR violation for clear error. *Bedrosian v. United States*, 912 F.3d 144, 152 (3d Cir. 2018). We also apply the usual civil standard of willfulness, which encompasses recklessness, to FBAR penalties. *Id.* at 152. Recklessness is "conduct that violates 'an objective standard: action entailing an unjustifiably high risk of harm that is either known or so obvious that it should be known.'" *Id.* at 153 (quoting *Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 58 (2007)). The dispositive question here is whether Collins knew or "(1) clearly ought to have known that (2) there was a grave risk" that he was not complying with the reporting requirement, "and if (3) he . . . was in a position to find out for certain very easily." *Id.* (quoting *United States v. Carrigan*, 31 F.3d 130, 134 (3d Cir. 1994)).

Collins argues that the voluntary correction of his tax returns and application for amnesty prior to any investigation evidences a simple, honest mistake rather than willfulness. He faults the District Court for not considering that neither he, his accountant, nor his lawyer believed he owed any tax prior to the audit. He also points to his prompt payment towards the passive foreign investment company tax as evidence of good faith compliance inconsistent with willfulness. Finally, Collins

6

contends he could not have been expected to know about the FBAR requirement since his experienced accountant was unaware of the reporting requirement and believed it to be new. (In fact, the requirement has been in place since the 1970s.)

The District Court concluded that Collins's failure to disclose his foreign accounts was willful—not just reckless, but with "an actual intent to deceive." *Collins*, 2021 WL 456962, at *1. A "sophisticated taxpayer," Collins was aware of his foreign accounts when he approved his tax filings and intentionally managed the accounts to avoid disclosure. *Id.* For example, Collins purposefully avoided receiving mail from his Swiss bank in the United States and, at one point, expressed a desire to "discreetly" transfer funds to the United States for a mortgage transaction. *Id.*

Collins offered various explanations over the years to justify his conduct, but the District Court found them unpersuasive. In 2010, Collins claimed he believed filing an IRS Form W-9 with his Swiss bank satisfied all reporting requirements—including those banks for which he did not file a Form W-9. In 2013, he justified his failure to report by citing his reliance on advice in the 1970s from an official at the U.S. Embassy in Paris. He next justified his non-disclosure in 2014 by explaining that his Swiss bank advised that withholding at the source absolved him of any further tax obligations. Finally, in 2015 Collins excused his failure to report by suggesting that Swiss law had prohibited him from even acknowledging the existence of his private bank accounts. The District Court found these justifications "objectively unreasonable." *Collins* 2021 WL 456962, at *1.

Our review of the record leads us to conclude that the District Court committed no error, much less clear error, when

it found that Collins's failure to disclose his foreign accounts was willful. Schedule B of IRS Form 1040 contains a check-the-box question (line 7a) that places a taxpayer on notice of this obligation. IRS, OMB No. 1545-0074, Schedule B (Form 1040) (2007). Schedule B directs taxpayers to check "Yes" if they had authority over, or an interest in, a foreign account. *Id.* ("At any time during 2007, did you have an interest in or a signature or other authority over a financial account in a foreign country, such as a bank account, securities account, or other financial account? See page B-2 for exceptions and filing requirements for [FBAR]"). Collins repeatedly checked "No" and filed no FBAR until 2010. He filed returns indicating he had no foreign financial accounts while managing investments worth hundreds of thousands of dollars in his French, Canadian, and Swiss accounts (even after engaging an accountant in 2005). So we agree with the District Court that Collins did not plausibly claim he should not have known about the FBAR filing requirement. *See Kimble v. United States*, 991 F.3d 1238, 1242–43 (Fed. Cir. 2021), *cert. denied*, 142 S. Ct. 98 (2021) (holding that a taxpayer has inquiry notice of the FBAR reporting requirement even if failing to read line 7a of Schedule B).

Collins claims the District Court gave insufficient weight to his voluntary filing of amended returns, prompt payment of overdue taxes, and subjective belief that he did not owe tax. But disagreement with the District Court's weighing of evidence does not establish clear error. And it is wrong to suggest that "a voluntary correction . . . should be legally sufficient to negate willfulness as a matter of law." Collins Br. 38; *United States v. Klausner*, 80 F.3d 55, 63 (2d Cir. 1996) ("[E]ventual cooperation with the government does not negate willfulness."). The penalties imposed under the Bank Secrecy

8

Act stem from Collins's failure to disclose foreign assets, not his failure to pay overdue tax. A subjective belief he owed no tax is, at best, tangential to the core inquiry of a § 5314 violation—whether a taxpayer "clearly ought to have known" of his obligation to report his interest in foreign financial accounts. *Bedrosian*, 912 F.3d at 153. Put simply, Collins should have known of that obligation.

Collins had undisclosed foreign accounts, constructive knowledge of the requirement to disclose his accounts, and falsely represented that he had no such accounts. Therefore, the District Court did not clearly err when it held that Collins willfully violated the reporting requirement of § 5314.

B

Collins next challenges the IRS's imposition of a $308,064 penalty under the Bank Secrecy Act. We review de novo the affirmance of the IRS's penalty calculation. *See, e.g.*, *Pennsylvania, Dep't of Pub. Welfare v. U.S. Dep't of Health & Hum. Servs.*, 647 F.3d 506, 511 (3d Cir. 2011). So we apply the same standard of review as the District Court to the underlying agency decision. *Id.*

Courts will set aside the IRS's determination of a penalty only if it was arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law. *See, e.g.*, *Kimble*, 991 F.3d at 1242. Under this standard, we will uphold an agency determination where there is a "rational connection between the facts found and the choice made." *Frisby v. U.S. Dep't of Hous. and Urb. Dev.*, 755 F.2d 1052, 1055 (3d Cir. 1985) (quoting *Burlington Truck Lines v. United States*, 371 U.S. 156, 168 (1962)). Moreover, because the IRS "is charged with choosing the means by which to enforce and achieve the

9

goals" of the Bank Secrecy Act, "heightened deference is due to the agency's penalty assessment." *See Sultan Chemists, Inc. v. U.S. EPA*, 281 F.3d 73, 83 (3d Cir. 2002). The court "must ensure that, in reaching its decision, the agency examined the relevant data and articulated a satisfactory explanation for its action, including a rational connection between the facts found and the choice made." *Prometheus Radio Project v. FCC*, 373 F.3d 372, 389–90 (3d Cir. 2004) (internal quotation marks omitted). Only rarely are IRS proceedings considered "so insufficient as to mandate de novo review." *Rum v. United States*, 995 F.3d 882, 893 (11th Cir. 2021), *cert. denied*, 142 S. Ct. 591 (2021).

Prior to trial, the District Court said it would review the validity of the IRS's penalty calculation de novo. The District Court observed that some courts have reviewed FBAR penalty assessments under an abuse of discretion standard borrowed from § 706 of the Administrative Procedure Act, but opined that the application of this standard is "limited in the FBAR context because Congress did not enumerate factors for the Secretary to consider in calculating the FBAR penalty." *Collins*, 2021 WL 456962 at *5. In its decision, however, the District Court modified its approach somewhat, upholding the IRS's $308,064 FBAR penalty under both de novo, *id.* at *4, and abuse of discretion standards, *id.* at *6–7. Collins labels the Court's abuse of discretion analysis an "impermissible change," but does not explain why it was improper or how it worked to his detriment. Collins Br. 52.

In this case, the IRS's proceedings were not so insufficient as to require de novo, rather than the usual abuse of discretion, review. Contrary to Collins's complaint of "scant evidence" to support the determination of his penalty, Collins Br. 42, the record demonstrates the facts on which the IRS

10

relied and the process by which the IRS computed, mitigated, and assessed Collins's penalty. The record shows the IRS's penalty calculation was not arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law. *See* 5 U.S.C. § 706(2)(A). The IRS revenue agent's worksheet demonstrates that she determined foreign balances from Collins's bank accounts and his belated FBAR disclosures. The revenue agent also found that Collins qualified for mitigation under the Internal Revenue Manual (the Manual). She then calculated the mitigated penalty based on the 2007 and 2008 account balances and assigned half to each year. The revenue agent then found this mitigated penalty "excessive" given Collins's facts and circumstance and further reduced the proposed penalty for each year. The amounts ultimately assessed against Collins, while substantial, represented an additional 50% reduction of the mitigated penalty for which he qualified—an overall reduction of 75% below the maximum penalty. The evidence is far from "scant"—the record supports the agency's computation, mitigation, and further reduction of the penalties assessed against Collins. The revenue agent followed the Manual and the agency did not act arbitrarily. Collins's penalty is well below the amount permitted by law and the administrative record supports a rational connection between the agency's findings and the penalty assessed. So the District Court did not err when it held that the IRS did not abuse its discretion.

IV

Collins also argues he should have been able to take discovery regarding internal IRS discussions about the computation of his FBAR penalty. "We review a district court's discovery orders for abuse of discretion, and will not disturb an order absent a showing of actual and substantial

11

prejudice." *Anderson v. Wachovia Mortg. Corp.*, 621 F.3d 261, 281 (3d Cir. 2010). To demonstrate an abuse of discretion, Collins "must show that the court's decision was arbitrary, fanciful or clearly unreasonable." *Democratic Nat'l Comm. v. Republican Nat'l Comm.*, 673 F.3d 192, 201 (3d Cir. 2012) (internal quotation omitted). He has not done so.

In a protective order, the magistrate judge held "that the opinions, conclusions, and reasoning of IRS officials are irrelevant to the ultimate issue in dispute, i.e., a determination of whether the Defendant's conduct was willful." App. 2. The order noted that the United States "agree[d] to produce a witness regarding the 2007 and 2008 FBAR audit of the Collins[es] which is at issue," App. 2, and permitted Collins to take discovery regarding the audit, but only "other than to seek information about the opinions, conclusions, and reasoning of government officials." App. 5.

The District Court concluded it possessed the "fundamental documents" that formed the basis of the IRS's penalty calculations. They included: Collins's Offshore Voluntary Disclosure Program submissions, FBAR filings, correspondence with the IRS, foreign account statements, and the IRS's FBAR decision documents. *Collins*, 2021 WL 456962127 at *6. Moreover, the revenue agent responsible for calculating Collins's penalty testified at trial. Collins contends that he is entitled to discovery from the revenue agent's supervisor, as well, who he alleges overruled the agent's initial, lower penalty calculation against the Manual's guidance.

Collins mischaracterizes the exchange between the revenue agent and her supervisor, as well as the relevant Manual guidelines. The revenue agent's activity record—a journal of actions taken during the audit—shows that the

supervisor felt the agent's penalty determination was "too low" or expressed disagreement with its value, *see, e.g.*, App. 632–37 (entries for 2/17/15, 5/1/15, 5/7/15, and 6/25/15), but Collins still received a penalty determination well below the original mitigated value. Far from depriving the revenue agent of her due discretion, as Collins alleges, the Manual's guidelines on FBAR penalty mitigation require an agent to "make [the FBAR penalty] determination with the written approval of that [agent's] manager." App. 629. The supervisor was empowered to reject the revenue agent's proposal as too low before the agent selected an appropriate penalty. So the record demonstrates the IRS adhered to its own guidelines, and even Collins concedes the IRS does not act arbitrarily when it follows the Manual. In sum, Collins cannot show any prejudice regarding the scope of his discovery.

V

Finally, Collins challenges the District Court's addition of interest and a failure-to-pay penalty under the Federal Claims Collection Act. Collins contends that, if his other arguments are rejected, he should owe $308,064 plus 1% interest accruing from March 15, 2021—the date the District Court entered judgment—pursuant to 28 U.S.C. § 1961. Whether the provisions of the Collection Act at 31 U.S.C. § 3717 apply to the FBAR penalty is a question of law subject to de novo review. *Abraham v. St. Croix Renaissance Grp., L.L.L.P.*, 719 F.3d 270, 275 n.5 (3d Cir. 2013).

The Bank Secrecy Act offers no independent authority for the Government to collect additional failure-to-pay penalties on FBAR penalties through the Collection Act. *See* 31 U.S.C. § 5321(b). Accordingly, Collins contends the Collection Act's application is ambiguous, and the canon of

strict construction of revenue statutes dictates resolution of ambiguity in the taxpayer's favor. Collins also cites our *Bedrosian* decision to argue that the FBAR penalty is a tax that is statutorily untethered from the Collection Act. *Bedrosian*, 912 F.3d at 151 ("Our take is the FBAR statute is part of the IRS's machinery for the collection of federal taxes; thus it is an act 'providing for internal revenue.'").

But even if the FBAR provision is a revenue statute for jurisdictional purposes, the FBAR penalty is not a tax within the statutory context of failure-to-pay penalties of the Collection Act. The Collection Act provides for interest and late-payment penalties on "debt[s]," 31 U.S.C. § 3717(a), (e), which are defined as "any amount of funds or property that has been determined by an appropriate official of the Federal Government to be owed to the United States." *Id.* § 3701(b)(1). This includes "any fines or penalties assessed by an agency." *Id.* § 3701(b)(1)(F). The interest and late-payment penalty provisions of § 3717, however, do not apply to debts under "the Internal Revenue Code of 1986 (26 U.S.C. 1 *et seq.*)." 31 U.S.C. § 3701(d)(1).

Unfortunately for Collins, his FBAR penalty is not a debt under the Internal Revenue Code; it arises under 31 U.S.C. § 5321(a)(5) for a violation of the Bank Secrecy Act. As a nontax debt, the FBAR penalty falls within the auspices of the Collection Act. *See* 31 U.S.C. § 3701(a)(8) (defining "nontax" debts as any debts "other than [debts] . . . under the Internal Revenue Code of 1986."). *Bedrosian* should not be read to hold otherwise. *Cf. Bedrosian*, 912 F.3d at 151 (concluding only that the Bank Secrecy Act penalties "'provid[e] for internal revenue' within the meaning of [the jurisdictional statute] 28 U.S.C. § 1295(a)(2)").

14

Collins sees ambiguity where there is none. The provisions of the Collection Act apply unless another statute "explicitly fixes the interest or charges" on a particular type of federal claim, in which case the more specific statute governs. *United States v. Hyundai Merch. Marine Co., Ltd.*, 172 F.3d 1187, 1192 (9th Cir. 1999) (emphasis omitted) (quoting 31 U.S.C. § 3717(g)(1)). Since the Bank Secrecy Act does not fix interest or similar charges, or otherwise deprive § 3717 of its effect, § 3717 controls—and requires—the imposition of pre-judgment interest and penalties on the debt Collins owes to the United States.

Collins further argues that imposing the 7% interest and failure-to-pay penalty pre-judgment is unjust, as the rules pertaining to taxpayer challenges to FBAR claims were "Kafkaesque" before *Bedrosian* clarified jurisdictional questions in 2018. Collins Br. 61. He points to pre-*Bedrosian* uncertainty over whether his route to judicial challenge lies through full or partial payment of his penalty, and whether he should have filed in a federal district court or the Court of Federal Claims. Collins's uncertainty over the proper judicial forum, however, does not create statutory ambiguity regarding the Collection Act's application. Nor is his decision not to pre-pay his FBAR penalty reason to disregard the Collection Act. The accumulation of pre-judgment interest is a risk inherent in that litigation strategy. There is no basis now to excuse Collins from the consequences of his own choice. Because the Government timely filed suit to reduce the assessment to judgment, interest and penalties under § 3717 are appropriate.

Collins's argument that the Collection Act failure-to-pay penalty applies only to claims or debts, but not judgments, fares no better. There is no basis to conclude § 3717 ceases to apply to a "debt" once that debt is reduced to judgment. Section

15

3717 requires interest and late-payment penalties "on an outstanding debt on a United States claim." 31 U.S.C. § 3717(a). A debt is no less a claim of the United States simply because the Government has sued to collect and a court confirms that it is owed. In such circumstances, interest and penalties apply under § 3717—and are mandatory.

\* \* \*

The disparity between Collins's putative income tax-liability and his FBAR penalty is undeniably stark. Yet it is consistent with the Bank Secrecy Act, which forces Collins to suffer the consequence of his willful failure to disclose foreign accounts. We will therefore affirm the District Court's order assessing penalties and interest in full.