RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 24a0024p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

───────────────

UNITED STATES OF AMERICA,

*Plaintiff-Appellee*,

*v.*

JAMES J. KELLY, JR.,

*Defendant-Appellant*.

No. 23-1481

───────────────

Appeal from the United States District Court for the Eastern District of Michigan at Detroit.
No. 2:21-cv-12570—Gershwin A. Drain, District Judge.

Decided and Filed:  February 8, 2024

Before:  SILER, NALBANDIAN, and MATHIS, Circuit Judges.

───────────────

## COUNSEL

**ON BRIEF:**  Charles A. Haas, Livonia, Michigan, for Appellant.  Jennifer M. Rubin, Pooja A. Boisture, UNITED STATES DEPARTMENT OF JUSTICE Washington, D.C., for Appellee.

───────────────

## OPINION

───────────────

MATHIS, Circuit Judge.  Under the Bank Secrecy Act, individuals with foreign bank accounts containing $10,000 or more must annually file a Report of Foreign Bank and Financial Accounts ("FBAR") with the U.S. Department of the Treasury.  An individual who fails to file an FBAR by the deadline risks civil penalties.  If the failure to file was accidental, the government can assess a penalty of up to $10,000.  If, however, the failure to file was willful, the civil penalty grows exponentially.

The government sued James Kelly to recover civil penalties, claiming that Kelly willfully failed to timely file FBARs for 2013, 2014, and 2015.  The district court granted summary judgment to the government.  Because Kelly's failure to file was a willful violation of the Bank Secrecy Act, we affirm.

## I.

Kelly is a U.S. citizen.  In 2008, Kelly closed his domestic bank accounts and opened an interest-bearing account at Finter Bank in Zurich, Switzerland.  He designated the Finter account as "numbered" so that his name would not appear on the statements.  R. 48-4, PageID 466.  He also requested that Finter retain, rather than mail him, any account-related correspondence.  Kelly completed a "Tax Form U.S. Withholding/Individual" when he opened this account, which informed him that "persons liable to U.S. taxation can only continue to invest in U.S. securities if they disclose their identity to the IRS by filing a form W-9."  R. 48-8, PageID 518.  Instead of providing an IRS Form W-9 and disclosing the account to the IRS, Kelly chose to divest from U.S. securities.

Kelly's actions, or lack thereof, after he opened the account are important.  He never sought professional or legal advice about "federal reporting obligations or requirements in regard to the Finter account" or "potential tax implications," and he never confirmed with Finter whether it was reporting his account to the federal government.  R. 48-4, PageID 476–77.  He did, though, ask the bank whether it would respond to IRS requests, and Finter told Kelly that the "IRS [would] have to go via Swiss Authorities."  R. 48-9, PageID 520.  Between 2013 and 2015, Kelly maintained a balance of around $1.5 million in the Finter account.

In July 2012, Finter closed Kelly's account after he failed to provide it with U.S. tax-compliance documentation.  The bank reopened his account a few months later but designated it as "Mandatory High Risk" and blocked any incoming and outgoing transactions.  *Id.* at 522.  Internal bank documents suggest that "US authorities most probably are not aware of these assets . . . since the client is not properly documented for US tax purposes."  *Id.*  In December 2013, Finter sent Kelly a letter again requesting proof of Kelly's compliance with U.S. tax laws,

including copies of his FBAR forms "for all years during which the account has been open from January 1, 2008 onwards." R. 48-10, PageID 523, 525. The bank warned Kelly that it:

> will be required to provide to the U.S. Justice Department information concerning your account, which will likely result in the disclosure of your identity to U.S. authorities. . . . [I]f your account with the Bank has not been reported to the IRS on a timely basis, we strongly suggest you consider participating in the IRS Offshore Voluntary Disclosure Program [("OVDP")].

*Id.* at 523. It also "strongly urge[d him] to promptly contact a qualified U.S. tax specialist" if Kelly was unable to consent to Finter reporting his account to the IRS or "to produce evidence of compliance with U.S. tax laws." *Id.* at 525.

In April 2014, a few months after receiving the December 2013 letter from Finter, Kelly requested to participate in the OVDP for the years 2008 through 2013. Kelly admitted that he was aware of his FBAR reporting obligations at that time.

The OVDP aims "to bring taxpayers that have used undisclosed foreign accounts and assets, including those held through undisclosed foreign entities, to avoid or evade tax into compliance with United States tax and related laws." R. 48-33, PageID 646. In becoming compliant, these taxpayers can avoid civil and criminal penalties.

The Treasury Department "preliminarily accepted" Kelly's voluntary disclosure as timely. R. 48-13, PageID 533–34. But it informed Kelly that acceptance of his disclosure depended on him making truthful disclosures, cooperating with the IRS, and trying, in good faith, to satisfy his tax obligations. Around this same time, Kelly closed his Finter account. With the help of a Swiss advisor, Kelly opened a new account with Bank Alpinum in Liechtenstein and transferred all of the Finter funds there.

In December 2016, more than two years after he became aware of his FBAR obligations, Kelly filed delinquent FBARs for the years 2008 through 2013. He did not file any FBARs, though, for 2014 or 2015.

In 2018, Kelly submitted a Form 433-A, Collection Information Statement[1] to the IRS under penalty of perjury. The form asked him to list his personal bank accounts; he did not include his account with Bank Alpinum. Later that year, the IRS removed Kelly from the OVDP, in part because he failed to provide information about his foreign assets.

The IRS then began investigating Kelly's compliance with FBAR requirements. It determined that he failed to meet the requirements of 31 U.S.C. § 5314 by willfully failing to timely file FBARs from 2013 through 2015, and proposed penalties for those years totaling $769,126.

The government initiated an action against Kelly after he failed to pay the FBAR penalties assessed against him. The parties filed cross-motions for summary judgment. The district court granted the government's motion and denied Kelly's. Kelly timely appealed.

## II.

We review a district court's grant of summary judgment de novo. *See Puskas v. Delaware Cnty.*, 56 F.4th 1088, 1093 (6th Cir. 2023). Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A genuine dispute of material fact exists if a reasonable factfinder could resolve the matter in favor of the nonmoving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). We view the evidence in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

## III.

The Bank Secrecy Act allows the Treasury Secretary to require American citizens to file reports of accounts abroad, including the power to create a "reasonable classification of persons subject to" reporting requirements. 31 U.S.C. § 5314(a), (b)(1). Treasury regulations pursuant

---

[1]"Form 433-A is used to provide current financial information to the IRS for determining how a wage-earning individual can satisfy an outstanding tax liability. The Form asks for information about bank accounts, domestic and foreign, and the current balance." R. 48-26, PageID 615.

to the Act mandate that American citizens with interests in foreign financial accounts exceeding $10,000 annually file an FBAR with the Treasury Department. 31 C.F.R. §§ 1010.306(c), 1010.350(a). Taxpayers must file FBARs by June 30 of each applicable calendar year with respect to accounts "maintained during the previous calendar year." *Id.* § 1010.306(c). FBARs "are designed to help the government trace funds that may be used for illicit purposes and identify unreported income that may be subject to taxation separately under the terms of the Internal Revenue Code." *Bittner v. United States*, 598 U.S. 85, 89–90 (2023) (internal quotation marks omitted).

The Treasury Secretary "may impose a civil money penalty" on an individual who fails to file an FBAR by the deadline. 31 U.S.C. § 5321(a)(5)(A). If the failure to file an FBAR is not willful, the penalty "shall not exceed $10,000." *Id.* § 5321(a)(5)(B)(i). However, for "any person willfully violating" the FBAR requirement, the maximum penalty increases to the greater of $100,000 or 50% of the balance in the account at the time of the violation. *Id.* § 5321(a)(5)(C)–(D). "A person willfully violating" the FBAR requirements could also subject himself to criminal penalties. *Id.* § 5322(a). The Secretary has delegated authority to the IRS to enforce the FBAR requirements, which includes investigating potential violations, and assessing and collecting penalties. 31 C.F.R. § 1010.810(g).

## A.

We must first determine what it means to "willfully" violate the FBAR requirements. As mentioned above, a willful violation can lead to criminal and civil penalties. The type of penalty sought dictates how we interpret "willfully." *See Bryan v. United States*, 524 U.S. 184, 191 (1998) ("The word 'willfully' is sometimes said to be 'a word of many meanings' whose construction is often dependent on the context in which it appears." (quoting *Spies v. United States*, 317 U.S. 492, 497 (1943))).

What does "willfully" mean in the context of a criminal violation of the FBAR requirements? We have previously examined this issue and determined that "statutory willfulness is 'voluntary, intentional violation of a known legal duty.'" *United States v. Sturman*, 951 F.2d 1466, 1476 (6th Cir. 1991) (quoting *Cheek v. United States*, 498 U.S. 192, 201 (1991)).

This type of criminally willful violation of the FBAR requirements, we explained, "may be proven through inference from conduct meant to conceal or mislead sources of income or other financial information." *Id.* (citation omitted); *see also Ratzlaf v. United States*, 510 U.S. 135, 137 (1994) ("To establish that a defendant 'willfully violat[ed]' [reporting obligations], the Government must prove that the defendant acted with knowledge that his conduct was unlawful." (first alteration in original)).

But we have yet to address what "willfully" connotes when the IRS seeks to impose a civil penalty for an FBAR violation. In *Safeco Insurance Company of America v. Burr*, the Supreme Court held that "where willfulness is a statutory condition of civil liability," it encompasses "not only knowing violations of a standard, but reckless ones as well." 551 U.S. 47, 57 (2007). As such, the Court found that civil liability under the Fair Credit Reporting Act ("FCRA") for "willfully fail[ing] to comply" attached to "acts known to violate the Act," and also "to reckless disregard of statutory duty." *Id.* at 56–57. This interpretation "reflects common law usage, which treated actions in 'reckless disregard' of the law as 'willful' violations." *Id.* at 57 (citation omitted).

*Safeco* considered the term "willfully" as it appeared in the FCRA's civil and criminal statutory provisions. The FCRA's criminal-enforcement provisions require an offender to have acted "knowingly and willfully"[2]—similar to the criminal-penalty provisions of the Bank Secrecy Act. The Court highlighted the different requirements needed to establish willful criminal and civil liability under the FCRA, stating that "in the criminal law 'willfully' typically narrows the otherwise sufficient intent, making the government prove something extra, in contrast to its civil law usage, giving a plaintiff a choice of mental states to show in making a case for liability." *Id.* at 60.

---

[2]15 U.S.C. §§ 1681q ("Any person who knowingly and willfully obtains information on a consumer from a consumer reporting agency under false pretenses shall be . . . imprisoned for not more than 2 years . . . ."), 1681r ("Any officer or employee of a consumer reporting agency who knowingly and willfully provides information concerning an individual from the agency's files to a person not authorized to receive that information shall be . . . imprisoned for not more than 2 years . . . .").

Based on the above authorities, we hold that, for purposes of an FBAR civil penalty, a willful violation of the FBAR reporting requirements includes both knowing and reckless violations.  In so holding, we join every other circuit to have addressed this issue.  *See United States v. Rum*, 995 F.3d 882, 889 (11th Cir. 2021) (per curiam); *Kimble v. United States*, 991 F.3d 1237, 1242 (Fed. Cir. 2021); *United States v. Horowitz*, 978 F.3d 80, 88 (4th Cir. 2020); *Bedrosian v. United States*, 912 F.3d 144, 153 (3d Cir. 2018).

**B.**

Having determined that civil liability for willful violations of the Bank Secrecy Act's FBAR requirements encompasses both knowing and reckless conduct, we next consider if a genuine dispute of fact exists as to whether Kelly, at a minimum, acted recklessly in failing to adhere to his FBAR obligations.  A reasonable factfinder could reach only one conclusion—Kelly's conduct in failing to comply with his FBAR obligations was reckless, if not knowing.

Reckless conduct in the civil context involves conduct that violates "an objective standard: action entailing 'an unjustifiably high risk of harm that is either known or so obvious that it should be known.'"  *Safeco*, 551 U.S. at 68 (citing *Farmer v. Brennan*, 511 U.S. 825, 836 (1994)); *see also Brawner v. Scott Cnty.*, 14 F.4th 585, 594 (6th Cir. 2021).  As the Fourth Circuit has noted, "civil recklessness contrasts with criminal recklessness and willful blindness" because "both of those concepts incorporate a subjective standard."  *Horowitz*, 978 F.3d at 89 (citing *Farmer*, 511 U.S. at 836–37).  Still, civil recklessness requires proof of more than negligence.  *Brawner*, 14 F.4th at 596–97 (citations omitted).  Thus, in the context of a civil FBAR penalty, the government can establish a willful violation "based on recklessness" by proving that "the defendant (1) clearly ought to have known that (2) there was a grave risk that an accurate FBAR was not being filed and [that] (3) he was in a position to find out for certain very easily."  *Horowitz*, 978 F.3d at 89 (internal quotation marks omitted); *see also Bedrosian*, 912 F.3d at 153; *Rum*, 995 F.3d at 889–90.

Kelly does not dispute that he failed to timely file FBARs for 2013, 2014, and 2015.  He argues, however, that he did not act knowingly or recklessly.  To support his argument, he relies primarily on his participation in the OVDP prior to the due date for the 2013 FBAR and his

conduct after being terminated from the program, including ordering annual reports from Bank Alpinum—which he believed were sent to the government—and hiring a Swiss account manager.

But the record contains ample undisputed evidence that shows Kelly willfully failed to timely file FBARs for 2013 through 2015. For one, he took steps to intentionally evade his legal duties. *Cf. Sturman*, 951 F.2d at 1476. Kelly designated his Finter account as "numbered" so that his name would not appear on the statements, and he requested that the bank retain any account-related correspondence. These efforts, which allowed him to shield his considerable assets from U.S. authorities, "evince[] more than mere negligence." *Horowitz*, 978 F.3d at 90. Kelly also shielded his account from U.S. authorities by opting out of investing in U.S. securities, which would have required him to file a Form W-9 with the IRS. Only after Finter told Kelly that it would disclose his account to U.S. authorities did Kelly take steps to comply with his reporting obligations by requesting to participate in the OVDP. Yet, even after that point, he did not meet the 2013 FBAR filing deadline. And his subsequent statements to the IRS about his foreign assets were found to be false and incomplete.

At any rate, Kelly's conduct was objectively reckless. He opened a Swiss bank account, into which he immediately deposited over $1.8 million. He did not, however, seek professional advice about his reporting obligations or the potential tax implications of those assets. Kelly also did not confirm with Finter whether it would report his assets to U.S. authorities. Finter closed his account, warned Kelly that it was required to report to U.S. authorities, and urged him to seek professional tax advice. After all of this, Kelly applied to participate in the OVDP and, by his own admission, became aware of his reporting requirements. Kelly knew he had failed to report in the past and that this was an ongoing obligation. But he still failed to inquire whether his FBARs were being prepared and filed—and indeed, he never submitted the 2014 and 2015 FBARs. And he never consulted a tax advisor or an attorney. Given that he ought to have known about the risk of noncompliance, and could have found out by simply asking, his failure to disclose was, at the very least, reckless.

Kelly's excuses do not hold water. First, Kelly's argument that he is entitled to a penalty under the "non-willful standard" because he participated in the OVDP falls short. Although the

Treasury Department initially allowed Kelly to participate in the OVDP, Kelly failed to provide the government with information about his foreign assets and he was ultimately removed from the program for his noncompliance. *Cf. United States v. Collins*, 36 F.4th 487, 493 (3d Cir. 2022). Kelly claims that he was working to cure his FBAR deficiencies at the time of his termination from the OVDP. He points to cases where individuals withdrew from the OVDP, suggesting that although those withdrawals negate the intent to remedy, a removal from the program does not. *See id.* at 490–91; *Kimble*, 991 F.3d at 1241; *United States v. Ott*, 441 F. Supp. 3d 521, 526–27 (E.D. Mich. 2020). But in two of the cases he cites, the findings of willfulness did not hinge on either defendant's participation in the OVDP. *Kimble*, 991 F.3d at 1241–43; *Ott*, 441 F. Supp. 3d at 526–27. And in *Collins*, the IRS, not the court, concluded that the defendant was liable for civil penalties for his "willful failure" to report foreign accounts after withdrawing from the OVDP. 36 F.4th at 490–91. *Collins* also made clear that "it [was] wrong to suggest that a voluntary correction . . . should be legally sufficient to negate willfulness as a matter of law." *Id.* at 493 (internal quotation marks omitted). At any rate, the evasive actions that Kelly took while participating in the OVDP largely negate his intent-to-remedy theory, including his refusal to disclose to the government where he had transferred the Finter funds. All that his unsuccessful attempts to participate in the OVDP show is that he was aware of his FBAR obligations. Even after he requested to participate in the program in April 2014—at which time, he concedes, he knew about his FBAR obligations—he failed to file a timely FBAR for 2013 or any FBARs for 2014 and 2015.

Second, Kelly's decision to engage a Swiss account manager does not excuse his noncompliance. Kelly hired the account manager in 2014, when he instructed the manager to transfer all his assets to another foreign bank account in a different country. But Kelly could not recall this advisor ever telling him that the 2014 or 2015 FBARs had been filed. *See Horowitz*, 978 F.3d at 90 ("Despite numerous red flags, they neither made a simple inquiry to their accountant nor gave even the minimal effort necessary to render meaningful their sworn declaration that their tax returns were accurate."). And he never asked anyone else to prepare these forms.

The undisputed facts show that Kelly knew about his foreign account, undertook considerable efforts to keep it secret, did not consult with any professionals about his tax obligations, and then failed to ensure that the FBARs were submitted after learning he had not met these reporting requirements in the past. Given all of this, Kelly's failure to satisfy his FBAR requirements for the years 2013, 2014, and 2015 was a willful violation of the Bank Secrecy Act.

**IV.**

For the reasons set forth above, we **AFFIRM** the judgment of the district court.